*Revenue,* 298 *So.*2d 210 (Fla.App.1974). *See McQuillin Municipal Corporations* (3d Ed 1968) § 12.137.

 We also agree that the enactment of the Campaign Contributions and Expenditures Reporting Act, *N.J.S.A.* 19:44A–1, *et seq.,* does not require public subsidy of an official's election litigation expenses. Moreover, the existence of statutes providing indemnity to a police officer, *N.J.S.A.* 40A:14–155, or a board of education member, *N.J.S.A.* 18A:12–20, for defense of an action connected with the performance of his duties does not make unlawful the public's failure to indemnify an elected mayor for the kinds of expenses involved here.

Affirmed.

A, AN INFANT, BY HIS GUARDIAN AD LITEM, J, AND B & C, HIS PARENTS, INDIVIDUALLY, PLAINTIFFS, v. D, E & F, OBSTE-TRICIANS, AND G, A DRUG MANUFACTURER, DEFEN-DANTS.

Superior Court of New Jersey
Law Division Bergen County

Decided July 3, 1984.

*Myron W. Kronisch* for plaintiffs (*Kronisch & Schkeeper,* attorneys).

*Thomas C. Kelly* for plaintiffs on this application (*Holzapfel, Perkins & Kelly,* attorneys).

*Edward F. Seavers, Jr.,* guardian ad litem (*MacDonald, Ryan & Jaekel,* attorneys).

SIMPSON, A.J.S.C.

This is a contested application under *R.* 1:21–7(f)—prior to amendments to *R.* 1:21–7 effective as to contingent-fee arrangements agreed to after January 15, 1984—for an increased attorney's fee in excess of the amount allowable pursuant to *R.* 1:21–7(c). Letters are used to designate the parties because the trial judge approved a settlement including an agreement that the terms be confidential and the file sealed.

A was born in 1971 with no feet and most of his left hand missing. He and his father (B) and mother (C) sued three obstetricians (D, E & F) alleging medical malpractice, and a drug manufacturer (G) charging strict liability in tort, breach of express warranty, and negligence. The gist of the suit was that a progestational agent administered to C in the first trimester of pregnancy, to treat threatened abortion, resulted in the boy's deformities. Despite the physical handicaps there is no apparent emotional loss in the child. He is now 12 ½ years old, works with computers, looks forward to college, and as far as is known—has a normal life expectancy.

The case originated in another county and plaintiffs' personal counsel (H) referred his clients to trial counsel (I). A standard *R.* 1:21–7 contingent fee retainer was signed February 27, 1978 and included an obligation by B and C to pay disbursements in the event of no recovery. H became a judge thereafter, so that his active involvement in the case ended—but he continues to have a financial interest in a portion of the fee. Since I is a certified civil trial attorney under *R.* 1:39, H may receive a referral fee pursuant to DR 2–107(A)(3), but the total fee must not exceed reasonable compensation for the legal services rendered in connection with the case. H and I should file a report with the Administrative Director of the Courts as to the fee division arrangement in accordance with DR 2–107(B)(1).

Trial of the case had actually begun in the county where H sits—by way of pretrial motions—when G moved to change venue, which was granted by the assignment judge. The

Appellate Division denied a motion for leave to appeal, and the case was transferred to Bergen County. D, E, and F had already settled for $50,000.00 and ultimately G settled for $485,000. Disbursements were $57,492.25, so that the *R.* 1:21–7(d) net aggregate recovery was $477,507.75. The trial judge approved an allocation of $202,507.25 for the parents' claims (including counsel fees) and $275,000.00 to be structured for the child. When the increased counsel fee application was contested, this court appointed a guardian *ad litem* (J) to represent the interests of the child. The guardian *ad litem* also made recommendations as to the terms of the structure for his ward, which were accepted by all parties and counsel, and approved by this court. Of the child's share, $50,000.00 was deposited in the Surrogate's Common Investment Fund and the remaining $225,-000.00 used to fund an annuity providing monthly and lump-sum payments set forth on exhibits I, II, and III attached hereto. The underwriter is the Manufacturers Life Insurance Company, which is rated A + (the highest rating) by A.M. Best Company.

If A lives his normal life expectancy of 57.02 years the total annuity payout will be $3,012,233.64; and if he does not, the guaranteed payments for 30 years will total $1,330,528.91. The increasing monthly payments provide a hedge against inflation and the lump-sum payments in the future will also cover unforseeable contingencies. The internal rate of return is approximately 11½% to 12% and this "interest" portion of the payments will escape federal and New Jersey income taxes. *I.R.C.* § 104(a)(2) and *N.J.S.A.* 54A:6–6(b). Although the actual future tax savings will depend upon A's annual top tax brackets, it is clear that hundreds of thousands of tax dollars will have been avoided, and the high internal rate of return locked-in for the boy's lifetime. If a lump-sum had been accepted and invested in other than tax-exempt securities, the income thereon would have been subject to such taxes. *Rev.Rul.* 65–29. In short, a superb job has been done by I and J in obtaining, improving, and perfecting this structured settlement.

There would have been no settlement—structured or otherwise—of course, unless the case had been prepared for trial and the defendants convinced that the possibility of a higher verdict warranted a settlement. In general, the settlement value of a case reflects a meeting of the minds on the estimated amount of a jury verdict multiplied by the probability of a verdict in favor of the plaintiff. This is never an easy determination and in a case like this is a most difficult matter. Liability was bitterly contested over a six-year period of investigation, pleadings, motions, discovery, and trial preparation. There was a very real possibility of verdicts of no cause-of-action against any of the defendants. I's affidavit detailed an estimated 1603 hours of legal effort, plus another 1031.5 hours by two associate attorneys. The guardian *ad litem* summed it up in his report that "the case involved a new area for drug product liability and a difficult factual situation within that new area of liability." It is unfortunate that no actual time records were kept, *Burd v. Hackensack Hospital Association*, 195 *N.J.Super.* 35 (Law Div.1984), but the claim of inadequacy of the counsel fee permitted under the old *R.* 1:21–7(c) is "thoroughly substantial and documented." [1]

Pursuant to the retainer agreement and *R.* 1:21–7(c), prior to the amendment effective January 16, 1984, the allowable counsel fee calculation would be as follows:

| R. 1:21–7(c) | % | On | Totals |
|---|---|---|---|
| (1) | 50 | $ 1,000.00 | $ 500.00 |
| (2) | 40 | 2,000.00 | 800.00 |
| (3) | 33⅓ | 47,000.00 | 15,666.67 |
| (4) | 25 | 50,000.00 | 12,500.00 |
| (5) | 20 | 150,000.00 | 30,000.00 |
| (6) | 10 | 227,507.75 | 22,750.78 |
| | Totals | $477,507.75 | $82,217.45 |

[1] *Pressler, Current N.J. Court Rules,* Comment *R.* 1:21–7(f) (1984).

The request by I is for a flat one-third of the aggregate net recovery or $159,169.25.[2] An initial objection by B and C, to even the $82,217.45 calculation, is that the fee on the first $50,000 of recovery should be limited to 25% in view of *R.* 1:21–7(c)(7) (or on all recovery under *R.* 1:21–7(c)(5) effective January 16, 1984). Such a limit is provided for when the recovery is for the benefit of an infant, as here, and "the matter is settled without trial." This court held, in *Iskander v. Columbia Cement Co.,* 192 *N.J.Super.* 114 (Law Div.1983) that the reduced percentage was applicable "where no substantial portion of the trial has occurred." In the present case, motions *in limine* as to the admissibility of evidence, had been heard for 2½ weeks by the original trial judge before the venue was changed because H was by then a judge in that county. While the determination of an overall reasonable fee does not turn on this point, the unique factual situation here involved suggests that the 25% limitation should not apply. If it did, the total fee on the first $50,000 of net recovery would be $12,500 instead of $16,966.67.[3]

The guardian *ad litem,* J, suggested that the new *R.* 1:21–7(c) schedule be used to calculate a reasonable fee under the circumstances of this case. This new schedule permits a maximum of 33⅓% on the first $250,000 recovered and 25% on the next $250,000. The fee on the net aggregate recovery of $477,507.75, on this basis, would be $140,210.27.[4] There are a number of factors suggesting that J's recommendation should be accepted. B and C are incorrect in asserting that an increase above the amount allowable under the old rule results in a windfall because most of the work was done prior to the new rule being effective. As summarized in *Iskander,* counsel

[2] ⅓ × $477,507.75.

[3] The sum of $500, 800, and 15,666.67 allowable under *R.* 1:21–7(c)(1) through (3).

[4] ⅓ × $250,000 = $83,333.33 plus ¼ × $227.507.75 = $56,876.94.

fees have not increased proportionately to the increased values of settlements and verdicts. *Id.* 192 *N.J.Super.* at 126–127. The DR2–106(A) factors applicable to contingent fees pursuant to *R.* 1:21–7(e) also support an *R.* 1:21–7(f) increase (*e.g.,* time, difficulty, skill, results, and ability of counsel). Assuming a ballpark accuracy of the estimated 2634.5 hours of legal effort expended, a counsel fee of $140,210.27 would only result in an hourly rate of $53.23. This may be compared with the $145.56 per hour estimated hourly rate in *Burd,* 195 *N.J.Super.* at 37. On the other hand, a flat one-third fee is inappropriate in view of the very high amount of disbursements and the fact that B and C assumed the full risk of paying the $57,492.25 in the event of no recovery. They had signed notes for the disbursements advanced by I and until the obstetricians settled they were committed to obtaining a second mortgage on their home in order to finance the trial costs. The doctrines of maintenance and champerty do not prevail in New Jersey, *Schomp v. Schenck,* 40 *N.J.L.* 195 (Sup.Ct.1878), and it is common knowledge that many plaintiffs' attorneys do not collect disbursements they have advanced where there is no recovery. In sum, a counsel fee of $140,210.27 is reasonable in light of all the circumstances and to maximize the aggregate marginal benefits of attorney and client. *Merendino v. FMC Corp.,* 181 *N.J.Super.* 503 (Law Div.1981).

The guardian *ad litem* has requested an $1800 counsel fee; no one objects; and it is allowed. The submitted order has been completed to reflect the approved counsel fee for I (including whatever is properly allocated to H), and I should file copies of papers on this application with the Administrative Office of the Courts as required by *R.* 1:21–7(f).

## EXHIBIT I

| Year Commencing | Monthly Payment | Year Commencing | Monthly Payment |
|---|---|---|---|
| July 1, 1984 | $ 400.00 | July 1, 2010 | $ 4,162.68 |
| July 1, 1985 | 400. | July 1, 2011 | 4,329.19 |
| July 1, 1986 | 400. | July 1, 2012 | 4,502.36 |
| July 1, 1987 | 400. | July 1, 2013 | 4,682.45 |
| July 1, 1988 | 400. | July 1, 2014 | 4,869.75 |
| July 1, 1989 | 750. | July 1, 2015 * | 5,064.54 |
| July 1, 1990 | 750. | | |
| July 1, 1991 | 750. | July 1, 2016 | 5,267.12 |
| July 1, 1992 | 750. | July 1, 2017 | 5,477.81 |
| July 1, 1993 | 750. | July 1, 2018 | 5,696.92 |
| July 1, 1994 | 750. | July 1, 2019 | 5,924.80 |
| July 1, 1995 | 750. | July 1, 2020 | 6,161.79 |
| July 1, 1996 | 2,500. | July 1, 2021 | 6,408.26 |
| July 1, 1997 | 2,600. | July 1, 2022 | 6,664.59 |
| July 1, 1998 | 2,704. | July 1, 2023 | 6,931.17 |
| July 1, 1999 | 2,812.16 | July 1, 2024 | 7,208.42 |
| July 1, 2001 | 2,924.65 | July 1, 2025 | 7,496.76 |
| July 1, 2002 | 3,041.63 | July 1, 2026 | 7,796.63 |
| July 1, 2003 | 3,163.30 | July 1, 2027 | 8,108.49 |
| July 1, 2004 | 3,289.83 | July 1, 2028 | 8,432.83 |
| July 1, 2005 | 3,421.42 | July 1, 2029 | 8,770.14 |
| July 1, 2006 | 3,558.28 | July 1, 2030 | 9,120.95 |
| July 1, 2007 | 3,700.61 | July 1, 2031 | 9,485.79 |
| July 1, 2008 | 3,848.63 | July 1, 2032 | 9,865.22 |
| July 1, 2009 | 4,002.58 | July 1, 2033 | 10,259.83 |

* Assuming Annuitant Living
Payments Guaranteed For 30 Years
And For the Annuitant's Lifetime
Thereafter

## EXHIBIT II

Supplemental Annual Payments

| DATE | AMOUNT |
|---|---|
| December 28, 1990 | $ 10,000 |
| " 1991 | 10,000 |
| " 1992 | 10,000 |
| " 1993 | 10,000 |

348

## EXHIBIT II

Supplemental Annual Payments

| DATE | AMOUNT |
|------|--------|
| December 28, 1994 | $ 10,000 |
| " 1995 | 10,000 |
| " 1996 | 10,000 |
| " 1997 | 10,000 |
| " 1998 | 10,000 |
| " 1999 | 10,000 |
| " 2000 | 10,000 |
| " 2001 | 210,000 |
| " 2011 | 154,166.67 |

## EXHIBIT III

**Your Single Premium Immediate Annuity Plan**

#3866907–3

* ANNUITY INCOME: $400 per Month increasing as specified below at **

INCOME OPTION: Life with 30 Years Guaranteed

**Living Benefits**

You will receive the annuity income as guaranteed under your income option. In addition, a substantial portion of your annuity is ordinarily treated as a return of principal and so is tax-exempt.*

| Annual income | Taxable Portion | * Exempt Portion |
|------|------|------|
| | N/A STRUCTURED SETTLEMENT | |

(In referring to this plan, consult policy form No. 1–35 to 1–43 inclusive and 1–152 to 1–165 inclusive. Immediate Annuity Certain is not available in Maryland or Wisconsin. Deferred Annuity Certain is not available in Wisconsin)

## EXHIBIT III

**Death Benefits**

Your beneficiary will receive the balance of any guaranteed amount, either in a lump sum or as income.

Premium: $225,000      Purchase Date: 6/12/84

Age: MALE DOB 11/12/71      Commencement Date: 7/1/84

\* If the premium is paid from a plan approved by the Internal Revenue Service, the entire amount may be taxable, depending on the portion funded by tax-free contributions.

\*\* increasing commencing 7/1/89 to $750 per month and increasing commencing 7/1/96 to $2500 per month increasing at 4% compounded annually.

In addition, commencing 12/28/90, $10,000 will be payable for 12 years certain only. Then a Lump Sum of $200,000 will be payable on 12/28/2000 and a Lump Sum of $154,166.67 will be payable on 12/28/2011.