Argued and submitted September 30, 1983, affirmed in part; reversed in part and remanded March 14, 1984

In the Matter of the Compensation of
John H. Denton, Claimant.

DENTON,
*Petitioner - Cross-Respondent,*

*v.*

EBI COMPANIES,
*Respondent - Cross-Petitioner.*

(81-08510; CA A26737)

679 P2d 301

Clinton D. Simpson, Eugene, argued the cause for petitioner - cross-respondent. With him on the briefs was Roy Dwyer, P.C., Eugene.

Jerald P. Keene, Portland, argued the cause for respondent - cross-petitioner. With him on the briefs was Wolf, Griffith, Bittner, Abbott & Roberts, Portland.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

In this workers' compensation case, claimant and his employer's compensation insurer (EBI) both appeal from an order distributing proceeds of a third party action. Claimant suffered a compensable injury January 24, 1978, when one leg was amputated above the knee and the other was crushed by machinery while he was working for Northside Lumber Company. He filed products liability actions against two manufacturers of equipment involved in the accident. By July, 1981, both actions were settled for a total of $275,000.

EBI, as the paying agency, claimed a lien on the settlement proceeds pursuant to ORS 656.593(1)(c), which allows a carrier to retain certain amounts from third party recoveries. That statute provides in part:

"* * * The proceeds of any damages recovered from an employer or third person by the worker or beneficiaries shall be subject to a lien of the paying agency for its share of the proceeds as set forth in this section and the total proceeds shall be distributed as follows:

"* * * * *

"(c) The paying agency shall be paid and retain the balance of the recovery, but only to the extent that it is compensated for its expenditures for compensation, first aid or other medical, surgical or hospital service, and for the present value of its reasonably to be expected future expenditures for compensation and other costs of the worker's claim under ORS 656.001 to 656.794. * * *"[1]

A dispute arose regarding the amount EBI was entitled to reserve for expected future expenditures on behalf of claimant, because claimant contended that the amount should be reduced to present value. Claimant requested that

---

[1] Claimant does not rely on ORS 656.593(3), which relates to *settlements,* as opposed to ORS 656.593(1)(c) and (d), which relate to recovery of *damages.* ORS 656.593(3) provides:

"A claimant may settle any third party case with the approval of the paying agency, in which event the paying agency is authorized to accept such a share of the proceeds as may be just and proper and the worker or the beneficiaries of the worker shall receive the amount to which the worker would be entitled for a recovery under subsections (1) and (2) of this section. Any conflict as to what may be a just and proper distribution shall be resolved by the board."

*See Schlecht v. SAIF,* 60 Or App 449, 455, n 5, 653 P2d 1284 (1982).

the Board order EBI to produce documents relating to interest rates available to it; the request was denied. Following the settlement in the third party action, claimant and EBI entered into an "Agreement and Stipulation" which provided, *inter alia:*

"Pursuant to ORS 656.593 Employee Benefit Insurance Company claims a lien in said settlement in the sum of $55,630.84 for monies advanced and $40,361 for expected future expenditures."

It was stipulated that claimant's counsel would retain $45,000 of the settlement proceeds in a trust account pending resolution of the dispute by the Workers' Compensation Board.

Pursuant to ORS 656.593(1)(d) the Workers' Compensation Board resolved the dispute. At the hearing, EBI claimed a distribution from the proceeds of the settlement in the amount of $68,545 in addition to the $55,630.84 already received pursuant to the agreement. The claimed amount includes $43,844 for future medical expenses and $24,701 for time loss payments made and expected to be made to claimant pursuant to ORS 656.728. $21,988.34 of the latter amount represents time loss payments made by EBI before the "Agreement and Stipulation." The Board found that EBI had proved anticipated future medical costs of $37,675 and held that EBI was not entitled to reimbursement for the claimed time loss payments made before the stipulation, because they were not included in the agreement as a part of the lien. EBI was entitled, the Board said, to reimbursement for any time loss payments made after the stipulation, but the total amount of the lien could not exceed the stipulated figure of $40,361 for future medical expenses and time loss. The Board also held that the reserve for future expenses did not have to be reduced to its present value.

■　　　Claimant assigns as error the Board's refusal to reduce the reserve to present value. EBI, in its cross-appeal, argues that it should be entitled to recover all time loss payments whenever made and that it is not bound by the stipulated amount of the lien or responsible to reimburse the Department. We have jurisdiction to consider appeals of Board orders regarding such distributions. *Schlecht v. SAIF,* 60 Or App 449, 653 P2d 1284 (1982).

We first consider claimant's appeal. He argues that the amount paid to the insurer as its "reserve" for expected future expenditures should be reduced to present value, *i.e.,* the amount of money which, if invested now at available interest rates, would yield the total amount of money required for future expenditures relating to his claim. He relies principally on the wording of the statute, which provides that the insurer shall be paid

"* * * the *present value* of its reasonably to be expected future expenditures for compensation and other costs of the worker's claim * * *." ORS 656.593(1)(c). (Emphasis supplied.)

Claimant argues that fairness requires that the insurer only be paid as much now as it will cost to maintain a fund to meet future expenses. Without reduction to present value, claimant contends, the insurer could invest its reserve at a high rate of return and reap an amount far greater than required to meet its expenses, thereby receiving a windfall that properly belongs to claimant. He asserts that such a windfall should not be the result of a claimant's pursuit of a third party action.

EBI argues that the words "present value" in the statute mean "current cost." It contends that the current practice among carriers is for estimates of future expenses to be made according to the values of medical care and other expenses in today's market, without figuring in likely increases in the cost of such services due to inflation. It argues that, even if inflation were taken into account, figuring the reserve on a present value basis would produce substantial administrative problems. The length of claimant's course of medical treatment, EBI argues, is speculative, and the carrier bears the risk that the medical problems will be greater than or occur sooner than anticipated. It argues that claimant's interpretation of the statute will put the carrier to the further risk that available interest or investment return rates will drop and that unanticipated needs of claimant may consume the principal before it can yield a return sufficient to cover the carrier's expenses.

We conclude that the statute requires the reserve for future expenses to reflect a reduction to actuarial present value. The statute is clear; the words "present value" should be given their natural, plain and obvious meaning. *See Perez v.*

*State Farm Mutual Ins. Co.,* 289 Or 295, 613 P2d 32 (1980). EBI's interpretation contradicts the normal meaning of the term.[2] The statute refers to "present value," not "present cost."

Such a reduction of damages is common practice. Although we are unaware of an Oregon case holding that the amount of a damage award for anticipated medical expenses should be reduced to present value, it has been held that other kinds of damage awards must be so reduced. *See, e.g. Osborne v. Bessonette/Medford Mtrs.,* 265 Or 224, 508 P2d 185 (1973) (loss of future earning capacity). Moreover, damages or settlements a claimant receives in his third party tort action may already have been reduced to present value.

EBI's policy arguments are unconvincing. It is true that, if the reserve is reduced to its present value, the carrier may be faced with some substantial risks. For example, the timing and extent of claimant's medical needs may be greater than anticipated, and the principal amount of the reserve could be dissipated sooner than expected. The interest rate might also be less than expected, and the carrier will be left with a reserve fund insufficient to cover the medical expenses. However, those risks are common in situations where the amount of damages to compensate for future loss must be estimated, for example, damages for loss of earning power or future medical care of an injured plaintiff.

The task EBI faced in estimating its future payments for claimant's medical care is conceptually little different from that of an injured plaintiff in a personal injury action, who must prove the gross amount of future loss and the formula to be used in reducing that amount to its present value. The risk of underestimating must fall on the party having the burden of proof. Under ORS 656.593, EBI has the burden of establishing the amount of the reserve fund. It is appropriate in estimating future payments to take into consideration anticipated increases due to inflation. That compensation carriers generally follow the practice of using current costs for estimating a

---

[2] According to Webster's Third New International Dictionary 1794 (unabridged ed 1976), the term means:

"The principal of a sum of money payable at a future date that drawing interest at a given rate will amount to the given sum at the date on which this sum is to be paid."

reserve does not prevent EBI from utilizing estimated future costs. If the carrier estimates the future costs and that amount is not reduced to its present value, it could enjoy a windfall by investing the fund. Under the statutory scheme relating to allocation of third party recoveries, the carrier is only entitled to reimbursement—not a profit.

The reserve for future medical expenses and other costs should have been reduced to its present value to determine the amount of the settlement distributable to EBI. As discussed *infra,* EBI is bound by the stipulation claiming $40,361 as the estimated amount for future expenditures. That is the maximum amount EBI can claim, and it must be reduced to its present value.[3] On remand, the Board must determine the appropriate formula for calculation of present value from evidence presented by the parties. The Board apparently denied claimant's motion to order EBI to produce certain investment information on the basis that the information would be irrelevant, because the reserve fund did not have to be reduced to its present value. In the light of our decision, the Board should reconsider its ruling on the motion.

We turn to EBI's cross-appeal. Its claim before the Board included $24,701 for time loss benefits paid or expected to be paid to claimant under ORS 656.268(1). The portion of the lien at issue on cross-appeal is the time loss benefits paid or expected to be paid while claimant is enrolled in a vocational rehabilitation program.

A claimant's entitlement to time loss payments ordinarily ceases once he is determined to be medically stationary. ORS 656.268(2). Benefits continue, however, if the claimant is enrolled and actively engaged in an authorized vocational program. ORS 656.268(1). The carrier continues to make time loss payments during the program, but the Workers' Compensation Department reimburses the carrier from the Rehabilitation Reserve. ORS 656.728(3). ORS 656.593(1)(c) requires the carrier to include in its lien an estimated amount for future benefits and "other costs" of the claim. In 1979 the legislature added the following language to ORS 656.593(1)(c):

---

[3] EBI does not contend that the stipulation bars claimant's request that the estimated future expenditures be reduced to present value.

"* * * Such other costs include * * * any reimbursements made pursuant to ORS 656.728(3) * * *." Or Laws 1979, Ch 839, § 12.

The amendment was effective January 1, 1980. Or Laws 1979, Ch 839, § 33. Before the 1979 amendment, there was no express requirement that a carrier include in its lien on a third party recovery time loss payments for which it would receive reimbursement from the Department.

The Board held that time loss payments reimbursable by the Department were not includable in the lien if EBI had incurred them before the stipulation, because:

"* * * These costs represent liquidated amounts of which EBI was aware, or should have been aware, at the time it entered into the stipulation with claimant and his attorney."

Time loss payments after the stipulation, the Board held, are part of the lien amount but only to the extent that all amounts recoverable for future expenses did not exceed the stipulated sum of $40,361. The Board then held:

"* * * Regardless of whether EBI recovers any part of the reimbursable benefits paid to or in behalf of claimant from the proceeds of the third-party recovery, EBI is obligated to reimburse the Workers' Compensation Department for all such expenditures paid to EBI pursuant to ORS 656.728(3). EBI's waiver of the recovery of these expenditures by the terms of the Stipulation and Agreement is not binding on the Department, and the Department is obligated to recover these expenditures from EBI. Cf. ORS 656.593(1)(c)."

The Board included in its order a provision requiring EBI to repay any time loss payments which were reimbursed by the Department pursuant to ORS 656.728(3).

EBI argues that, because claimant's injury occurred in 1978, the statute in effect at that time applies. Consequently, it contends, it was not required to seek a lien on claimant's third party recovery for the time loss payments reimbursed by the Department. It follows, EBI argues, that there was no reason to include those costs in the stipulation and that if it is required to repay the Department, it should be able to recover the amounts repaid from the third party recovery. The implication of EBI's argument is that it should not be required to repay the Department, because the statute,

which arguably requires that result, was not in effect at the relevant time.

■   The Board, when it ordered EBI to repay the reimbursed costs to the Department, apparently assumed that the 1979 amendment was applicable and required carriers to reimburse the Department. We need not decide that issue. The question whether EBI had to repay the Department was not properly presented in this hearing, and the Department was not a party. The issue presented was the distribution of the third party settlement between claimant and EBI. The Board erred in ordering EBI to repay the Department, and we reverse that portion of the order.

■   We express no opinion on the application of the 1979 amendment to distribution of the proceeds of the settlement. The amendment went into effect on January 1, 1980; the stipulation was entered into in 1981. At that time EBI should have been aware that there was a risk that the statute would apply and could have included such a contingency in the stipulation. A compensation carrier must approve any third party settlement. Consequently, a claimant's attorney, in negotiating a settlement, is vitally interested in the amount of the lien the carrier will claim. Any amount the carrier claims will reduce the net amount of the settlement the claimant may retain. The obvious purpose of the stipulation was to determine, for settlement negotiation purposes, the total amount EBI claimed as a lien. EBI is bound by the stipulation as to the total amount it was asserting for costs already paid and estimated future costs. Its failure properly to perfect a lien for any amount not contained in the stipulation does not affect any obligation it may have to pay future time loss payments or reimburse the Department. Conversely, the fact that it may ultimately be required to repay the Department for reimbursed time loss payments does not entitle it to claim a distribution from the settlement not claimed in the stipulation. *SAIF v. Parker,* 61 Or App 47, 656 P2d 335 (1982). We agree with the Board that EBI has not perfected a lien for the time loss payments made before the stipulation. Claimant does not contest the award to EBI of a distribution for time loss payments made or to be made following the stipulation. The gross amount of EBI's claim may include those amounts, but not to exceed a total amount of $40,361. Consequently, the gross amount of EBI's claim is $40,361, and that amount must be reduced to its present value on remand.

Remanded to determine present value of $40,361; the provision of order requiring EBI to repay reimbursed time loss payments to the Department is reversed; affirmed in all other respects.