GLICKSTEIN, Judge.
The workers’ compensation lienholder, Michigan Mutual Insurance, in a suit for a share of the injured worker’s recovery in a settlement of a tort suit against the manufacture of his safety helmet, appeals the judgment.
Gustaf Thorarinsson, now the ward of Karl Nikula, was severely and permanently injured in the course and scope of his employment as a welder in construction when he was hit on the head by a piece of steel scaffolding when the scaffold was being dismantled. Thorarinsson was wearing a construction helmet manufactured by the E.D. Bullard Company. He sued the manufacturer under product liability principles and received a settlement in the amount of $3,600,000. He had received workers’ compensation, from his employers’ carrier, of $535,452.84. Appellant, the employer’s carrier, sought to recover all of the benefits paid out to appellee’s ward, claiming he had received from the product liability settlement more than the full amount of his tort claim; or at least that it should receive pro rata shares of his receipts from the product liability settlement as he receives payments under it.
The trial court ruled that the full value of appellee’s tort claim was $15 million; his settlement was $3.6 million, and his workers’ compensation benefits so far amounted to $535,452.84. It said the settlement had been reduced because the injured party was found comparatively negligent to the tune of 90%.
The court said that under the statute the court must reduce the amount of the insurer’s lien by the percent of comparative negligence, and therefore appellant would be entitled only to 10% of its payments to the injured worker to date, or $53,545.28, and to retain 10% of any further payments it would make to the appellee’s ward, until it had received and retained amounts equal to the worker’s “net recovery on his tort claim of $2,031,000.” This is the present value of appellee’s ward’s settlement after fees and costs. Thereafter it was to resume payment of full workers’ compensation benefits.
The insurer/lienholder moved for rehearing, claiming the evidence showed the ap-pellee’s ward’s recovery was not $3.6 million but approximately $17 million; and that while the worker was in fact receiving 24%, not 10%, of the value of his tort claim, the court was allowing the lienholder to get back only 10% of its present and future payments to the injured worker. It argued it should at least get a pro rata share,, out of the settlement, or 24%. The rehearing motion was denied.
During the proceedings, plaintiff’s trial counsel testified as an expert that had the case gone to a jury, the jury might have found plaintiff’s ward 100% at fault. There was another attorney/expert witness who said the case was worth $15 million but plaintiff’s ward was at least 75% at fault, since he had been placed where he was precisely to keep a lookout for falling scaffolding parts, and was injured because he was not looking up. There were two additional expert witnesses (one by deposition) testifying that the total damages were, respectively, $7-10 million, and greater than $15 million.
There are three issues:
I. Whether the trial court erred in reducing the amount of the workers’ compensation carrier’s lien by the percent of the claimant’s comparative negligence, and not by the ratio borne by the amount of claimant’s tort claim settlement to the full value of his tort claim. We conclude that it did, and reverse and remand on this point.
*336 II. Whether the trial court erred in finding that the extent of appellee’s award’s comparative negligence was 90%. Our decision on the first issue renders this issue moot.
III. Whether the trial court erred when it determined appellant was not entitled to reimbursement of 100% of its outstanding lien, inasmuch as appellee’s ward will receive via periodic payments more than the full value of his tort claim, which the court has found to be $15 million. We conclude that it did not, and therefore affirm on this point.
I
The relevant statute, governing how the carrier’s recovery on a workers’ compensation lien is prorated, is section 440.39(3)(a), Florida Statutes (1981). The accident involved here occurred September 7, 1982. The relevant subsection is as follows:
(3)(a) In all' claims or actions at law against a third-party tortfeasor, the employee, or his dependents or those entitled by law to sue in the event he is deceased, shall sue for the employee individually and for the use and benefit of the employer, if a self-insurer, or employer’s insurance carrier, in the event compensation benefits are claimed or paid, and such suit may be brought in the name of the employee, or his dependents or those entitled by law to sue in the event he is deceased, as plaintiff or, at the option of such plaintiff, may be brought in the name of such plaintiff and for the use and benefit of the employer or insurance carrier, as the case may be. Upon suit being filed, the employer or the insurance carrier, as the case may be, may file in the suit a notice of payment of compensation and medical benefits to the employeee or his dependents, which said notice shall constitute a lien upon any judgment or settlement recovered to the extent that the court may determine to be their pro rata share for compensation and medical benefits paid or to be paid under the provisions of this law. The employer or carrier shall recover from the judgment, after attorney's fees and costs incurred by the employee or dependent in that suit have been deducted, 100 percent of what it has paid and future benefits to be paid, unless the employee or dependent can demonstrate to the court that he did not recover the full value of damages sustained because of comparative negligence or because of limits of insurance coverage and collecti-bility. The burden of proof will be upon the employee. Such proration shall be made by the judge of the trial court upon application therefor and notice to the adverse party. Notice of suit being filed shall be served upon the employer and compensation carrier and upon all parties to the suit or their attorneys of record by the employee. Notice of payment of compensation benefits shall be served upon the employee and upon all parties to the suit or their attorneys of record by the employer and compensation carrier.
In its initial brief, appellant relies substantially on the opinion in Miceli v. Litton Systems, Inc., 566 F.Supp. 875 (S.D.Fla.1983). There the trial court had found that Miceli had settled his suit against Litton for $125,000, and, after fees and costs, had a net recovery of $50,000. The workers’ compensation lienholder estimated its total payments, past and future, would come to $225,000. The full value of the worker’s claim was determined to be $1 million, based on testimony of an expert attorney witness as well as testimony of defense counsel and the opinion of plaintiff’s attorneys.
The trial court also found that Miceli had been comparatively negligent.
The appellate court called particular attention to the language of section 440.-39(3)(a) which at times pertinent to Miceli read, “The carrier shall recover, ... after attorney’s fees and costs have been deducted, 100 percent of what it has paid and future benefits to be paid, unless the employee ... can demonstrate that he did not recover the full value of damages sustained because of comparative negligence ...” Id. at 877 (emphasis added by Miceli court).
The appellate court said that since, in Miceli, comparative negligence was *337 present, the carrier was entitled to recover the same percentage of the settlement as the plaintiff recovered of the full value of his claim. Id. Miceli had recovered, after deducting attorney’s fees and costs, $50,-000 as against the full value of his case, which was $1,000,000, in other words, 5 percent. The appellate court observed that the settlement had been made for so small a part of his total case because Litton’s liability was questionable and it was highly probable Miceli would be found comparatively negligent at a high percentage.
The appellate court in Miceli determined that the workers’ compensation lienholder should recover 5% of the $225,000 in compensation and medical benefits it had paid or would pay. The court cited Sentry Insurance Company v. Keefe, 427 So.2d 236 (Fla. 3d DCA 1983).
Of particular significance is the following excerpt from the Miceli opinion:
The degree of plaintiffs’ own negligence is not to be considered by the court in arriving at any determination of the carriers right of recovery in the case of a settlement since it has already been considered in arriving at the ratio between the full value of the claim and the amount of net recovery. Obviously where the case is disposed of by a judgment following trial, the amount of plaintiffs [sic] own negligence is determined by the trier of fact which serves to diminish the plaintiffs’ recovery of the full value of damages sustained.
Id. at 878. The court had previously stated that “[t]he statute does not require the court to consider the degree or percentage of plaintiffs’ own negligence. It simply requires a finding that the doctrine of comparative negligence was applicable in the case.” Id. at 877.
In Sentry Insurance Company v. Keefe, 427 So.2d 236 (Fla. 3d DCA 1983) — the case cited in Miceli — the compensation carrier had been awarded less than three percent of the benefits it had already paid, from the plaintiff’s third party settlement. The benefits the plaintiff had already received under workers’ compensation were $37,000; the third party settlement was for $80,000; the full value of the plaintiff’s damages was found on the basis of competent evidence to be $1 million, and, as the record showed, the reduction of his recovery was attributable to his comparative negligence. Because $80,000 is 8% of $1 million, the appellate court ruled that the carrier was entitled to recover 8% of both past and future benefits paid to the plaintiff, subject to a cap of the net proceeds the plaintiff received from the settlement. The latter was stated on the authority of Lee v. Risk Management, Inc., 409 So.2d 1163 (Fla. 3d DCA 1982). The Sentry court stated that the proper method to apply for recovery by the carrier from future benefits was to order withheld the same percentage — subject to the cap — from future compensation payments. This had been done in Lee. 427 So.2d at 127 n. 3. See also Reliance Ins. Co. v. Davis, 491 So.2d 1177 (Fla. 4th DCA 1986) (Case governed by section 440.-39(3)(a), Florida Statutes, as it appeared after 1977 amendment; properly utilized Lee formula).
The Sentry court stated that the statute precludes the trial court from reducing a compensation carrier’s third-party lien beyond the extent to which full recovery is limited by uncollectibility or comparative negligence. 427 So.2d at 236. This opinion left open whether the carrier’s lien could be reduced below the amount equal to a pro rata share of what the net third-party recovery was to the claimant’s total damages, on account of the dubiousness of the third party’s liability. The same court closed this remaining gap with an answer in the negative, in United Parcel Services v. Carmadella, 432 So.2d 702, 704 (Fla. 3d DCA 1983). The Carmadella court considered that the 100% clause of the statute was conspicuously void of equitable notions, in contrast to earlier statutes, and was to be taken at face value.
Appellant observes that two recent cases — Aetna Insurance Company v. Norman, 468 So.2d 226 (Fla.1985), and American States Insurance v. See-Wai, 472 So.2d 838 (Fla. 5th DCA 1985) — determine the applicable ratio by using the gross settlement amount — rather than the net *338 amount after fees and costs — divided by the total value of the worker’s tort claim. That is true of those cases. The amount of the net award or settlement from the third party tortfeasor appears as the fund from which the lien is to be satisfied; it is not the numerator in determining the applicable ratio to set the amount of the lien to be enforced. The same 1981 statute applicable here was being interpreted in Norman. That is also the way the law should be applied here. Both Norman and See-Wai state, by the way, that no reduction of the carrier’s pro rata recovery by reason of a pain and suffering factor is permissible.
Confusion about how comparative negligence fits into the statutory calculus may arise because of the way some of the opinions refer to the comparative negligence. It is not a stated percent of comparative negligence that figures, but (one might say) the effective percent, as determined by dividing the amount of the actual award or settlement from the third party tortfeasor by the total value of the injured worker’s claim. Where there has been a jury award of damages and a jury finding of comparative negligence, with a percent, the results are the same; that is, the actual amount the injured worker will receive from the tort suit is the percent of liability attributed to the defendant times the total damages. But where there has been a settlement, the actual ratio of the settlement amount to the total damages — not a court pronouncement about percent of comparative negligence — determines what part et-ermines what part of its payout the carrier may get back out of the tort claim award and withhold out of future benefits it pays.
Here the trial court found on the basis of competent substantial evidence that the full value of Thorarinsson’s damages was $15 million, and the settlement was in the amount of $3.6 million. The court also found Thorarinsson was comparatively negligent. Proper application of the statute requires dividing $3.6 million by $15 million, obtaining a figure of 24%. Because the tortfeasor paid or will pay 24% of Thorarinsson’s total damages, Michigan Mutual Insurance is entitled to recover 24% of the benefits it has paid to Thorarinsson and withhold 24% of benefits to be paid him in the future.
Appellee’s attempt to show that the trial court’s ruling, based on its stated percent of comparative negligence, is correct, relies on cases in which there was not a settlement, but a court award which was then reduced by the percent of the plaintiff’s comparative liability. As stated earlier, in such cases the comparative liability percentages coincide with the relation between the damages for which the third party tort-feasor is tapped and the total damages as determined by the jury. The same is not likely to be true where there has been a settlement and the trial court determines what the total damages were. Case law suggests it is fruitless if not inappropriate for the court to determine a percent of comparative negligence in these circumstances; all that is needed is a determination that there was comparative negligence. Proration then is based on the ratio of the actual award to the court-determined amount of total damages.
Appellee argues if the legislature had intended the actual amount of the settlement to control, it would have said so. We think, as do several courts whose opinions have been cited above, that that is what the legislature did — or at least meant by what it said.
II
Appellant’s third issue is its claim that in time under the settlement appellee’s ward will receive more than the full value of his damages. The logic seems to be that this is a structured settlement and that hypothetically it represents a present value for both damages already incurred and anticipated future damages. Under the structured settlement, the appellant may end up with more than $3.6 million. He is not receiving $3.6 million in cash now — that is merely the present value placed on what he is to get.
Appellee urges that if $3.6 million is the present value of the settlement, that figure should be treated in the same way as it would be if it were a present cash settle *339 ment. That makes sense. If the claimant received $3.6 million in cash now and invested it, he would end up with a lot more than $3.6 million; but in those circumstances we would consider only the $3.6 million. Here, apparently the tortfeasor rather than the claimant is the one “investing” the money, but the result is the same. The fact appellee’s ward will receive his money in installments which apparently will therefore be augmented by interest does not give the settlement a greater present value than $3.6 million.
We cannot predict just how much money Thorarinsson will collect over time, but we think that is irrelevant. The correct figure to put in the formula was the present value of the settlement.
Appellant somewhat clarifies its position in its reply brief. It reasons that the total value of the damages includes the future dollar value of future damages, and that the amount of the settlement is merely the present value of the total damages; hence appellee’s ward is receiving 100% of his damages, and appellant should obtain 100% reimbursement. However, we believe the court has properly found that there was comparative negligence, that being the case, the formula derived by the Lee court from the statute applies. The present value of the settlement, divided by the total damages, provides the proration percentage.
ANSTEAD, J., and KLEIN, HERBERT M., Associate Judge, concur.