**ROCKY MOUNTAIN GENERAL, and Colorado Compensation Insurance Authority, Petitioners,**

v.

**Mark B. SIMON, and The Industrial Claim Appeals Office of the State of Colorado, Respondents.**

**No. 91CA0625.**

Colorado Court of Appeals, Div. I.

Feb. 27, 1992.

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

Anderson, Campbell & Laugesen, P.C., Thomas M. Schrant, Denver, for petitioners.

Benjamin P. Kramer, P.C., Benjamin P. Kramer, Denver, for respondent Mark B. Simon.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John R. Parsons, Asst. Atty. Gen., Denver, for respondent Indus. Claim Appeals Office.

Opinion by Judge REED.

The petitioners, Rocky Mountain General and Colorado Compensation Insurance Authority (CCIA), contest an order of the Industrial Claim Appeals Panel denying them credit for the full amount of a third-party settlement received by the claimant, Mark B. Simon. We set aside the order.

The claimant, a construction worker, was permanently and totally disabled in January 1985 when a mobile home fell off its cinder block foundation, crushing his hip and pelvic area. The insurer did not admit liability until April 1990, when disputed questions of carrier coverage were resolved in the claimant's favor. In the interim, the claimant underwent various surgical procedures and extensive rehabilitation. Claimant's medical expenses were paid in part by the Colorado Department of Social Services, subject to reimbursement under the Colorado Medical Assistance Act (Medicaid). Section 26–4–112(3), C.R.S. (1989 Repl.Vol. 11B).

In September 1988, the claimant settled his third-party tort claim against the manufacturer of the cinder blocks. Although CCIA was at that time contesting liability, the carrier granted the claimant written approval to settle the claim, on the sole condition that the recovery be greater than $50,000.

The subsequent settlement agreement provided for monthly annuity payments into the corpus of an irrevocable, discretionary trust, the "Mark B. Simon Trust," in which the claimant is the primary beneficiary and claimant's brother is the trustee. The trust was established more than eigh-

teen months *prior* to CCIA's admission of liability and was designed to preserve the claimant's eligibility for continued Medicaid benefits.

Under the trust instrument, the trustee has "sole, absolute and uncontrolled discretion" to make distributions at such times and in such amounts as he deems appropriate. The trust corpus is funded under the settlement agreement with monthly annuity payments of $636 for a period of forty years or the duration of claimant's life, whichever is longer, and an additional lump sum of $300,000, payable in the year 2028.

At the time of hearing, the trust corpus had received annuity payments totalling $14,628; however, the claimant had received only two trust fund distributions to him personally amounting to $27.57.

At the hearing, CCIA asserted its statutory right to subrogation under § 8–41–203, C.R.S. (1991 Cum.Supp.) (formerly § 8–52–108, C.R.S. (1986 Repl.Vol. 3B)). However, the Administrative Law Judge (ALJ) ruled that settlement proceeds paid into the Mark B. Simon trust are exempt from the carrier's claim of subrogation except that portion which are distributed by the trust *to the claimant individually.* On review, the Panel affirmed the ALJ's order.

### I.

■ The petitioners contend that the claimant cannot unilaterally defeat their subrogation interest by placing the third-party settlement proceeds in an irrevocable discretionary trust. They argue that a similar attempt to circumvent subrogation was disallowed by this court in *Kennedy v. Industrial Commission,* 735 P.2d 891 (Colo.App.1986). We agree.

Section 8–41–203 provides that in cases of third party tort recoveries, a workers' compensation carrier "shall contribute only the deficiency, if any, between the amount of the recovery *actually collected* and the compensation provided by said articles...." (emphasis added)

In determining the extent of CCIA's subrogation claim to the third-party settlement proceeds, the ALJ found:

[T]he proceeds of the third-party settlement have been actually collected by the Mark B. Simon Trust, and not by Claimant. The evidence available supports the conclusion that this Trust was established to preserve Claimant's eligibility for Medicaid benefits, rather than for any other purpose, such as diminishing Colorado Compensation Insurance Authority's right of subrogation. Claimant has no discretion or control over the corpus of the Trust and the Trust is irrevocable: the ... Mark B. Simon Trust is an entity separate and distinct from Claimant, which exists for valid reasons independent of the complications of Claimant's workmen's compensation claim.

Relying upon the words "actually collected," the ALJ, and the Panel on review, interpreted § 8–41–203 as restricting the claim of subrogation to those proceeds from the settlement paid to the claimant *personally* rather than all of the settlement proceeds paid to the trust. We reject this statutory interpretation as being contrary to the overriding legislative intent of the statute designed to adjust the rights between the injured worker and the workers' compensation carrier for industrial injuries.

■ A statute must be construed in a manner that gives effect to the legislative purpose underlying its enactment and that achieves a just and reasonable result consistent with that purpose. Section 2–4–201(1)(c), C.R.S. (1980 Repl.Vol. 1B); *Johnson v. Industrial Commission,* 761 P.2d 1140 (Colo.1988). It must be construed as a whole, taking into account the nature of the problem addressed by the legislation and the statutory construction that best effectuates the legislative objectives. *Tate v. Industrial Claim Appeals Office,* 815 P.2d 15 (Colo.1991).

■ The purpose of the subrogation provisions set forth in § 8–41–203 is to adjust the rights between the injured worker and the compensation insurance carrier

by requiring reimbursement to the carrier of benefits paid to it out of the employee's recovery against a third-party tortfeasor. *Continental Casualty Co. v. Gate City Steel,* 650 P.2d 1336 (Colo.App.1982). It thus has the effect of preventing an injured employee from receiving a duplicate recovery. *Peterson v. Kester,* 791 P.2d 1185 (Colo.App.1989). The governmental interest in preventing double recoveries is significant and is generally held to override a literal or technical interpretation of statutes or insurance policies. *See generally* 2A A. Larson, *Workmen's Compensation Law* §§ 71.00 & 71.20 (1990).

The phrase "actually collected," when interpreted in the context of the statute as a whole, recognizes the reality that a judgment or settlement agreement does not automatically produce a monetary recovery for the prevailing party. Obviously, it would be inequitable to grant an employer or its insurance carrier subrogation credit for a judgment or settlement agreement which the claimant is unable to enforce. The legislative intent underlying § 8–41–203 is to preclude *double* recoveries; thus, if the claimant cannot enforce a judgment or settlement agreement in his favor, there is no *double* recovery in the first instance.

On the other hand, as the facts here demonstrate, the public policy of preventing duplicate benefits would be severely undermined if the statute were construed to limit subrogation to third-party proceeds which are paid to a claimant *individually.* At the time of hearing, damages amounting to $14,628 had been paid in settlement of the claimant's third-party tort claim. Yet only a fraction of that amount—$27.55—had been paid to the claimant *individually.*

To restrict an employer's or carrier's subrogation interest to proceeds paid to a worker *individually* would create an incentive for employees to circumvent the statute by simply agreeing with tortfeasors that settlement proceeds would be paid to an individual or legal entity other than the employee. This interpretation would defeat the public policy against double recov-

eries and would render the subrogation statute meaningless.

■ For this reason, we conclude that it is immaterial whether the settlement proceeds were paid to the claimant individually, or to a trust in which he is the sole beneficiary. It is likewise immaterial whether the proceeds were payable from the third-party tortfeasor directly, or from an annuity purchased by the third-party tortfeasor. We hold that when a third-party action results in a monetary recovery for work-related injuries, the employer or its carrier is entitled to subrogation credit for the amount of the monetary recovery, irrespective of whether the money is paid to the claimant directly or to an individual or legal entity designated to receive the proceeds.

Accordingly, here, the petitioners are entitled to a subrogation credit equivalent to the monthly annuity payments which have been paid into the Mark B. Simon Trust. The statutory phrase "actually collected" refers to monetary proceeds actually received, and therefore, the petitioners cannot claim credit for future annuity payments not yet paid into the trust.

### II.

■ We reject the claimant's argument that the Panel's order should be upheld because it effectively penalizes CCIA for its "irresponsibility" and five year delay in admitting liability for the claimant's injury.

The ALJ concluded that claimant had failed to establish the statutory requisites under § 8–43–203(2), C.R.S. (1991 Cum. Supp.) for imposition of a penalty for the untimely admission or denial of liability. That ruling has not been contested by the claimant and, thus, is binding on appeal. *See State Compensation Insurance Fund v. Wilson,* 736 P.2d 33 (Colo.1987).

The Panel's order is set aside, and the cause is remanded for the entry of an order consistent with this opinion.

PIERCE and TURSI, JJ., concur.