2012 COA 155

**HERTZ CORPORATION and Reliance Insurance Company/ Colorado Insurance Guaranty Exchange, through Western Guaranty Fund Services, Petitioners,**

v.

**INDUSTRIAL CLAIM APPEALS OFFICE of the State of Colorado and Robert G. Rodriguez, Respondents.**

No. 11CA2339.

Colorado Court of Appeals,
Div. V.

Sept. 13, 2012.

Ritsema & Lyon, P.C., Thomas L. Kanan, Denver, Colorado; McCrea & Buck, LLC, Bruce B. McCrea, James B. Buck, Denver, Colorado, for Petitioners.

John W. Suthers, Attorney General, Alice Q. Hosley, Assistant Attorney General, Denver, Colorado, for Respondent Industrial Claim Appeals Office.

Horowitz & Burnett, P.C., Robert M. Horowitz, Denver Colorado; Clisham, Satriana & Biscan, LLC, Patricia Clisham, Denver, Colorado, for Respondent Robert G. Rodriguez.

Opinion by Judge MILLER.

¶ 1 In this workers' compensation proceeding, the Colorado Insurance Guaranty Association (CIGA) appeals from the final order issued by the Industrial Claim Appeals Office (Panel), which disallowed it from taking a credit or offset against interest earned on the multiple third-party recoveries obtained by claimant, Robert G. Rodriguez. The interest included both the investment income generated by several lump-sum settlements and the interest component embedded in a statutorily required, court-ordered annuity investment. At issue is the breadth of CIGA's subrogation right under section 8–41–203, C.R.S.2011. We affirm.

## I. Background

¶ 2 The parties have stipulated to the relevant facts. In 1990, claimant, who was then employed by Hertz Corporation, sustained an industrial injury which required the amputation of his left index finger. He later developed reflex sympathetic dystrophy in his left extremity and underwent substantial treatment for that condition, including nerve blocks. In 1995, the physician administering a nerve block to claimant accidentally injected him with a toxic substance, instead of the correct anesthesia. While undergoing emergency surgery to correct the effects of the injection, claimant was over-sedated and experienced cardiac arrest, resulting in a profound anoxic brain injury and memory loss. Claimant cannot work, has required twenty-four-hour supervision, and has resided in an assisted living facility for brain-injured individuals.

¶ 3 Claimant received a workers' compensation award of ongoing medical benefits and permanent total disability (PTD) benefits. He also received the following third-party recoveries for malpractice:

1. A lump-sum settlement payment of $1,050,000 from the physician administering the nerve block, which included $50,000 for claimant's wife's loss of consortium claim;

2. A lump-sum settlement payment of $1,020,219.60 from the same physician for a separate, arbitrated issue;

3. A lump-sum settlement payment of $1,000,000 from another physician; and

4. A judgment against the hospital involved of $1,020,589.90 for future medical expenses and noneconomic losses and $133,806.98 for future lost earnings. The judgment represented the reduced present value of the jury's verdicts, which totaled $3,806,800.

¶ 4 Following the deduction of amounts for attorney fees and costs, the amount necessary to satisfy the existing subrogation lien of employer's insurer (CIGA's predecessor), and the amount designated to cover claim-

ant's wife's loss of consortium claim, claimant's conservator deposited the remaining proceeds from settlements one and three into interest-bearing accounts. The conservator deposited the proceeds from the second settlement into a court-approved structured settlement trust to provide claimant with monthly periodic payments of $9,667 funded by government treasuries, beginning in June 1997 and payable for eighty-two months. The funds, including interest, were to be used for claimant's support, maintenance, health, education, and welfare.

¶ 5 The district court in the hospital lawsuit ordered the judgment in that case payable by periodic payments, as was legally required at that time under the Health Care Availability Act. *See* Ch. 100, sec. 1, §§ 13–64–201 to –213, 1988 Colo. Sess. Laws 612–17; *HealthONE v. Rodriguez*, 50 P.3d 879, 896 (Colo.2002). The court ordered each party to submit proposed forms of funding for the future periodic payments. It granted the hospital's proposal, which was to internally fund the periodic payments through an annuity contract with its qualified liability insurance provider. The court ordered the hospital's insurer to fund monthly, lifetime payments of $6,650.14 beginning in November 1998 for payment of future medical expenses and noneconomic losses and monthly payments of $792.15 beginning in November 1998 and ending in 2024 for future lost earnings. The periodic payments included components of principal from the amount of the present value judgment and interest earned. The court, again, expressly entered judgment on the payment obligations assumed by the hospital's insurer "so that [claimant would have] a clear remedy in the event of nonpayment."

¶ 6 Claimant later moved in this proceeding for an order compelling CIGA to begin payments for PTD and medical benefits on a continuing basis and to pay past-due benefits. He claimed that he had used up all compensable third-party proceeds and was eligible for reinstatement of workers' compensation benefits. He also requested an order disallowing CIGA from offsetting any of the interest earned or any interest contained in the annuitized payments for loss of future earnings and medical costs.

¶ 7 The issue raised at the hearing on claimant's motion to compel was whether CIGA's subrogation rights included a claim to an offset or credit for the interest generated by the invested settlement proceeds and the interest embedded in the stream of periodic payments. Based on claimant's expert's report, the interest component in the periodic payments alone totaled $1,865,570.

¶ 8 The ALJ first determined that the interest and other returns earned on the invested settlement proceeds were not subject to offset by CIGA. The ALJ reasoned that CIGA had a subrogation right only for the compensation and expenses for which it was liable under the Workers' Compensation Act and only for those amounts paid by the third-party tortfeasor. The ALJ concluded that CIGA had no right to an offset or credit for the interest earned on the invested settlement proceeds because the interest did not represent either an item for which CIGA was liable or an amount recovered from a third-party tortfeasor. However, the ALJ found that CIGA was entitled to an offset for the annuitized periodic payments, including the embedded interest, because such interest was "part of the funding mechanism used to pay Claimant the full benefit of the amount awarded by the jury as ordered by the District Court for lost earnings and medical expenses" and represented the "type of benefits that CIGA would be required to pay, but for the recovery against the negligent third party."

¶ 9 The ALJ found that claimant's medical-related expenses exceed $20,000 per month. The ALJ also correctly recognized that CIGA was not entitled to a credit for or an offset against noneconomic damages and calculated a credit of $372,535.42, beginning on February 1, 2011, to be applied against claimant's continuing medical-related expenses. The ALJ also calculated a monthly net credit of $7,096.48, which was to continue to be applied after the exhaustion of CIGA's other credit and would require CIGA to pay claimant the difference between his monthly medical-related expenses and the net credit for that month.

¶ 10 On review, the Panel adopted the ALJ's reasoning regarding the interest earned on "claimant's chosen investments from the third-party settlements" and upheld that part of the ALJ's order that disallowed CIGA from taking a credit or offset for such interest or other returns. As for the interest component in the court-ordered periodic payments, the Panel held that it was not subject to CIGA's subrogation interest because it was not part of the economic and medical benefits claimant was entitled to recover from the tortfeasor or the workers' compensation insurer. The Panel concluded that the interest component instead reflected the yield produced by the investment of claimant's present value judgment. Therefore, the Panel set aside that part of the ALJ's order that had granted CIGA an offset or credit based on the interest component.

¶ 11 CIGA appeals both the determination that it is not allowed to take a credit or offset against the interest component in the periodic payments paid to claimant by the hospital's insurer and the interest and investment returns earned on the physician settlements.

## II. Standard of Review

¶ 12 When an ALJ's findings of fact are supported by substantial evidence, we are bound by them, § 8–43–308, C.R.S.2011, but an agency's decision that misconstrues or misapplies the law is not binding. *Paint Connection Plus v. Indus. Claim Appeals Office*, 240 P.3d 429, 431 (Colo.App.2010). Thus, we review de novo questions of law or the application of law to undisputed facts. *Hire Quest, LLC v. Indus. Claim Appeals Office*, 264 P.3d 632, 635 (Colo.App.2011). Although we review an administrative agency's conclusions of law de novo, we typically give deference to its interpretation of a statute it is charged to administer. *Specialty Rests. Corp. v. Nelson*, 231 P.3d 393, 398 (Colo.2010).

## III. Applicable Law

### A. Subrogation Statute

¶ 13 Section 8–41–203(1), C.R.S.2011, provides the workers' compensation insurance carrier with a subrogation right to the proceeds received by the claimant for economic damages awarded in a third-party lawsuit against the tortfeasor. Ch. 317, sec. 29, § 8–41–203(1), 1990 Colo. Sess. Laws 1843–44, the applicable version of the statute at the time of claimant's injury, provided, in relevant part, as follows:

If any employee entitled to compensation under articles 40 to 47 of this title is injured or killed by the negligence or wrong of another not in the same employ, such injured employee or, in case of death, such employee's dependents, before filing any claim under this article, shall elect in writing whether to take compensation under said articles or to pursue a remedy against the other person. Such election shall be evidenced in such manner as the director may by rule or regulation prescribe. If such injured employee or, in case of death, such employee's dependents elect to take compensation under said articles, *the payment of compensation shall operate as and be an assignment of the cause of action against such other person to the* state compensation insurance authority ... or *insurance carrier liable for the payment of such compensation. Said insurance carrier shall not be entitled to recover any sum in excess of the amount of compensation for which said carrier is liable under said articles to the injured employee*, but to that extent said carrier shall be subrogated to the rights of the injured employee against said third party causing the injury. *If the injured employee elects to proceed against such other person, the state compensation insurance authority fund ... or insurance carrier, as the case may be, shall contribute only the deficiency, if any, between the amount of the recovery against such other person actually collected and the compensation provided by said articles in such case. The right of subrogation provided by this section shall apply to and include all compensation and all medical, hospital, dental, funeral, and other benefits and expenses to which the employee or the employee's dependents are entitled under the provisions of said articles ... or for which employee's employer or insurance carrier is liable or has assumed liability.*

Nothing in this section shall be construed as limiting in any way the right of the injured employee to elect to take compensation under articles 40 to 47 of this title and also proceed against the third party causing the injury to recover any damages in excess of the subrogation rights described in this section.

(Emphasis added.)

¶ 14 The purpose of this statute is to adjust the rights between a claimant and an insurer by requiring reimbursement to the insurer out of the claimant's recovery against a third-party tortfeasor for amounts for which the insurer would be liable, thereby preventing a claimant's double recovery of both workers' compensation benefits and litigation proceeds. *Jordan v. Fonken & Stevens, P.C.*, 914 P.2d 394, 395 (Colo.App.1995). It does not limit the right of subrogation and assignment to the compensation which has been paid by the insurer, but instead allows the workers' compensation provider, the subrogee, to offset its liability for future benefits against the amount of the settlement. *United Fire & Cas. Co. v. Armantrout*, 904 P.2d 1375, 1379 (Colo.App.1995).

### B. Statutory Interpretation

¶ 15 When interpreting a statute, we must determine and give effect to the General Assembly's intent. *Davison v. Indus. Claim Appeals Office*, 84 P.3d 1023, 1029 (Colo. 2004). If the statutory language is clear, we interpret the statute according to its plain and ordinary meaning. *Specialty Rests.*, 231 P.3d at 397. However, to effectuate the Act's remedial and beneficent purposes, we must liberally construe it in favor of the injured employee. *Williams v. Kunau*, 147 P.3d 33, 36 (Colo.2006). Further, while we give deference to the Panel's reasonable interpretations of the statute it administers, we will set aside an interpretation that "is inconsistent with the clear language of the statute or the legislative intent." *Pena v. Indus. Claim Appeals Office*, 117 P.3d 84, 88 (Colo. App.2004).

### IV. Interest in the Court–Ordered Periodic Payments

¶ 16 CIGA first contends that the Panel erred in interpreting section 8–41–203(1) to preclude a credit or offset against the interest component in the annuitized periodic payments ordered for the judgment against the hospital. We conclude that the Panel properly determined that CIGA's subrogation rights did not extend to that part of the periodic payments, and, therefore, we disagree that it erred.

¶ 17 Initially, we note that although CIGA appears to claim on appeal that the Panel restricted it from asserting any offset or credit against the annuitized periodic payments in their entirety, the order on appeal clearly addresses only CIGA's right to an offset or credit against the interest component in those payments.

¶ 18 According to CIGA, section 8–41–203(1)'s plain language gives it a subrogation right against all of the monetary proceeds claimant "actually collected" in the hospital suit, including all of the proceeds paid to him in the form of the periodic payments. CIGA argues that claimant would gain a double recovery if its subrogation right were limited because the periodic payments compensate claimant for the future losses caused by the hospital and for which both the hospital and CIGA, as the workers' compensation provider, are liable. CIGA asserts that, as the ALJ found, the annuitized payments are simply the "funding mechanism used to pay claimant the full benefit of the amount awarded to him by the jury as damages for lost earnings and medical benefits," which it, otherwise, would be required to pay. CIGA also claims that "every cent coming to the employee as recovery in this tort action against the third-party is being paid by the third-party, through its insurer."

¶ 19 Because the judgment entered on the jury's verdict defined the hospital's liability, we are not persuaded by CIGA's analysis. As explained by claimant's expert, the periodic payments represent the amount of the original net present value judgment spread out over the duration of the annuity contract and comprise both principal and interest amounts. The payments·made at the beginning of the annuity start with a larger portion of interest, which gradually decreases as

the amount of principal increases. The remaining principal amount continues to earn interest and the cumulative payout will significantly exceed the judgment's present value. The purchase of the annuities essentially constitutes an investment of claimant's prior judgment and the interest earned on the annuity is funded by the original investment, not by the third-party tortfeasor's liability obligation. Thus, the interest earned on the annuity is not the equivalent of the economic and medical benefits recovered from the tortfeasor or owed by the workers' compensation provider. Rather, the interest component compensates claimant for the loss of use of funds during the accrual period. *See Farmers Reservoir & Irrigation Co. v. City of Golden*, 113 P.3d 119, 132 (Colo.2005) ("Interest, in the common acceptance of the term, 'is the compensation allowed by law, or fixed by the parties, for the use, detention, or forbearance of money or its equivalent.'" (quoting in part *Stone v. Currigan*, 138 Colo. 442, 445, 334 P.2d 740, 741 (1959))).

¶ 20 Further, although the subrogation claim extends to the "amount of the recovery ... actually collected," the statute also precludes the workers' compensation provider from recovering "any sum in excess of the amount of compensation for which" it is liable. Ch. 317, sec. 29, § 8–41–203(1), 1990 Colo. Sess. Laws 1843–44. As the Panel pointed out, nothing in the Act makes a workers' compensation provider liable to the claimant for interest earned on annuities. *See Husson v. Meeker*, 812 P.2d 731, 732–33 (Colo.App.1991) (subrogation statute limits carrier's recovery to its liability under the Act and does not provide, expressly or by implication, for receipt of interest). Thus, if CIGA received a credit or offset for the interest on the annuities, it would be permitted to recover a sum in excess of the amount of compensation for which it would be liable, in contravention of the statute.

¶ 21 Insofar as the interest embedded in the periodic payments compensates claimant for the time value of his damage award, and not for the economic and medical benefits due under the Act, it is not, as CIGA argues, designed or intended to pay for the same losses caused by his injuries. The annuitized payments are meant only to protect against the premature exhaustion of the damage award. *HealthONE*, 50 P.3d at 894. Therefore, the interest does not result in either a windfall or a double recovery to claimant. However, the converse is true; permitting CIGA to assert an offset or credit against the interest component would permit it to realize an unwarranted gain under the statutory framework.

¶ 22 In *Suburban Delivery v. Workers' Compensation Appeal Board*, 858 A.2d 219 (Pa.Commw.Ct.2004), on which the Panel relied, the court held that the annuity received by a claimant in a third-party tort action should be valued at its present value or cost for purposes of calculating the employer's subrogation lien. The court in *Suburban* adopted the reasoning of the Board, which had observed that "[a]n annuity is merely an investment of money and annuities have a cost." *Id.* at 222. The court saw no reason why the employer "should get benefit from the return on Claimant's investment in the annuity," particularly when, if "in a non-annuity situation, Claimant took a portion of the settlement money received and invest[ed], no one would reasonably argue that [employer] should have a subrogation interest in the return on Claimant's investment." *Id.* The court noted that using the present value, or cost, of the annuity in making lien calculations not only accords with the liberal construction in favor of the employee to be given the Pennsylvania act, but also avoids (1) a double recovery for the same injury, (2) having employer pay compensation made necessary by the negligence of third parties, and (3) relieving the third-party tortfeasors of any liability. *Id.* at 227.

¶ 23 Although, as CIGA argues, the subrogation statute at issue in *Suburban* varies from the statute in this case, we consider the statutory differences insignificant for purposes of this issue and, like the Panel, find the reasoning in *Suburban* instructive. Further, other jurisdictions have reached similar conclusions regarding the scope of their subrogation statutes. *See Michigan Mut. Ins. v. Nikula*, 509 So.2d 334, 338–39 (Fla.Dist.Ct. App.1987) (holding that the subrogation lien of claimant's carrier must be calculated using

the present value of that part of the settlement which was to be paid in installments augmented by interest), *approved,* 531 So.2d 330 (Fla.1988); *Hagen v. Venem,* 366 N.W.2d 280, 285–86 (Minn.1985) ("proceeds received" by injured employee under structured settlement, for purposes of statute governing employer's claim for reimbursement for benefits already paid and future credit against benefits payable when employee makes a successful claim against third-party tortfeasor, were the total amount to be paid out to employee reduced to its present value; the present value of the settlement reflects the amount of money the third-party tortfeasor would have to pay the employee immediately for the amount ultimately paid out under the settlement to accrue under an annuity, thereby effectively transforming the tortfeasor into the investor of the employee's damages recovery); *Lakin v. Daniel Marr & Son Co.,* 126 N.H. 730, 495 A.2d 1299, 1300 (1985) (Souter, J.) (workers' compensation carrier not entitled to recovery of prejudgment or post judgment interest on its lien on damages recovered by injured employee against liable third-party); *Denton v. EBI Cos.,* 67 Or.App. 339, 679 P.2d 301, 305 (1984) (amount paid to insurer as its reserve for expected future expenditures was properly reduced to its present value).

¶ 24 CIGA relies heavily on *Rocky Mountain General v. Simon,* 827 P.2d 629, 632 (Colo.App.1992), which held that

> when a third-party action results in a monetary recovery for work-related injuries, the employer or its carrier is entitled to subrogation credit for the amount of the monetary recovery, irrespective of whether the money is paid to the claimant directly or to an individual or legal entity designated to receive the proceeds.

However, the division in that case recognized only that the statutory phrase "actually collected" referred to the reality that a judgment or settlement agreement does not automatically produce a monetary recovery for the prevailing party and that it would be inequitable to grant an employer or its insurance carrier subrogation credit for a judgment or settlement agreement which the claimant is unable to enforce. *Id.* The division did not, as CIGA urges, equate the phrase "actually collected" to "actually recovered."

¶ 25 The claimant there accepted a structured settlement of his third-party claims without first receiving a lump-sum settlement or present-value judgment, as in this case. The third-party tortfeasor established an annuity, which made monthly payments into a discretionary trust established for the claimant's benefit. The trust had distributed directly to the claimant only a few dollars of the proceeds received from the annuity. The claimant contended that the amount "actually collected" was limited to the small amount he personally received and did not include the remainder of the funds paid into the discretionary trust for his benefit. The division rejected that argument, holding that restricting the carrier's subrogation interest to only the proceeds received personally by the claimant would create an incentive for claimants to circumvent the subrogation statute. *Id.* Those facts differ from those present here, where no trust was created to avoid paying proceeds to claimant. We therefore consider *Simon* inapposite.

¶ 26 We similarly conclude that *Carter v. Industrial Commission,* 182 Ariz. 128, 893 P.2d 1291 (1995), also relied on by CIGA, is distinguishable. There, the court determined that the lien rights of the workers' compensation carrier attached to funds when the claimant actually received them, whether payment was in a lump sum or a series of installments. Although the court concluded that a lien credit would extend to the gross amount of future annuity payments without any reduction to present value, it held only that the "floating" lien attached and could be calculated when the claimant actually received payments from the structured settlement. The decision did not address interest, and its holding did not suggest that the carrier could obtain reimbursement for more than what it owed the claimant as benefits under the Arizona workers' compensation law.

## V. Interest and Returns on Lump–Sum Settlements

¶ 27 CIGA next contends that the Panel improperly limited its right to claim an

offset or credit against the interest earned on the initial net lump-sum payments obtained from the physicians who caused claimant's damages. Again, we disagree.

¶ 28 CIGA incorrectly suggests that claimant's conservator placed all three lump-sum settlements into a structured settlement trust. The record establishes only that claimant's conservator sought approval to place the second physician settlement in a structured settlement trust, and it is unclear whether that was done and whether the conservator invested the other settlements in annuities. Regardless, because the settlements were first received as lump-sum amounts, their subsequent investment does not change our analysis.

¶ 29 Without support, CIGA maintains that the word "recovery" in the subrogation statute must be interpreted broadly (1) to protect any insurer against attempts by an injured worker to circumvent its subrogation right and (2) to prevent the insurer from suffering the loss when the responsible tortfeasor does not fund an adequate settlement or judgment to pay for the loss. CIGA argues that the sums claimant initially received from the physicians have now financed an ongoing income stream, similar to the court-ordered periodic payments, to cover the losses the physicians caused. However, we perceive nothing in the plain language of the statute that gives CIGA a claim or offset to the interest or returns claimant has earned by investing the lump-sum settlements. The third-party tortfeasors did not pay him the interest or returns; such funds were earned by virtue of the investment itself.

¶ 30 As discussed in the previous section, the phrase "actually collected" in the subrogation statute does not mean that an insurer has a subrogation right against the total sum, including interest that would be recovered over time. Such an interpretation could necessitate an inquiry into the adequacy and reasonableness of claimant's investments. It could also present a risk that the workers' compensation provider could recover a sum in excess of the amount for which it was liable to the claimant, in violation of the statute. *See Huston Barger Masonry/Kentucky Associated Gen. Contractors v. Farris,* 924 S.W.2d 838, 839 (Ky.Ct.App.1996) (interest received by claimant on his settlement is not funds recovered or "collected" from the tortfeasor or the employer, and allowing employer to recover interest on its credit would provide it an amount in excess of that recovered and would, in essence, be a recovery from the employee rather than the tortfeasor).

¶ 31 For the reasons discussed in the prior section, we also are not persuaded that claimant will realize a double recovery if CIGA is denied a right to subrogate the interest earned on the lump-sum settlements. *See Shelby v. Sun Express, Inc.,* 107 Ill.App.3d 362, 63 Ill.Dec. 115, 437 N.E.2d 764, 767–68 (1982) (employer was not entitled to interest on that portion of employee's settlement with the third-party tortfeasor representing benefits already paid to the employee, though the settlement had been invested). Contrary to CIGA's contention, the interest earned on the physician settlements was not designed, intended, or designated to cover the same losses claimant has sustained as a result of his industrial injury, regardless of whether it ultimately is used for his current needs.

¶ 32 We note that nothing in the record indicates that claimant attempted to circumvent CIGA's right of subrogation either through the court-ordered, statutorily required annuitized periodic payments or through his conservator's use of a structured settlement trust. Further, as claimant and the Panel note, the issue of circumvention by claimant was not raised before the ALJ or the Panel, and, is, therefore, waived. *See Arenas v. Indus. Claim Appeals Office,* 8 P.3d 558, 561 (Colo.App.2000) (we will not address arguments that were not made to the Panel). CIGA also raises the issue of claimant's alleged failure to obtain settlement approval for the first time on appeal and, therefore, we decline to address it. *See id.*

¶ 33 The order is affirmed.

Judge LOEB and JUDGE

STERNBERG * concur.