181 N.J. Super. 503 (1981)
438 A.2d 365
ROSE ANN MERENDINO, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF JOSEPH MERENDINO, JR., AND GENERAL ADMINISTRATRIX OF THE ESTATE OF JOSEPH MERENDINO, JR., PLAINTIFF,
v.
FMC CORPORATION, WAYNE MANUFACTURING COMPANY, INC. AND NORTH JERSEY EQUIPMENT COMPANY, INC., DEFENDANTS.
Superior Court of New Jersey, Law Division Bergen County.
Decided November 6, 1981.
*505 Alan Y. Medvin, for plaintiff (Horowitz, Bross, Sinins, Imperial & Medvin, attorneys).
Paul L. Potenza, guardian ad litem, for Justine Merendino, filed a report as guardian ad litem respecting proposed settlement.
No appearance was required on behalf of any of the remaining parties.
SIMPSON, A.J.S.C.
This is an application under R. 1:21-7(f) for approval of an attorney's fee in excess of the contingent fee provided for in the retainer agreement or allowable pursuant to R. 1:21-7(c). The retainer and rule schedule are identical, except the retainer only provides for 33 1/3% of the first $3,000 recovered while the rule permits up to 50% on the first $1,000 and 40% on the next $2,000. Plaintiff's counsel seeks a fee of $103,691.25 and asserts that $81,293.55 is allowable under R. 1:21-7. I find that $73,495.80 is allowable under the cited rule, but determine pursuant to R. 1:21-7(f) that $87,824.93 is a reasonable fee in light of all the circumstances.
Plaintiff is the administratrix ad prosequendum and general administratrix of the estate of Joseph Merendino, Jr., her husband, who died March 21, 1979 while operating a street sweeper *506 as an employee of the City of Garfield. The widow, Rose Ann Merendino, was born September 3, 1947 and the only child, Justine, was born February 27, 1969. Workers' compensation death benefits under N.J.S.A. 34:15-13, and based upon decedent's weekly wages of $167.69, are $92.20 for 419 weeks until Justine is 18 and then $84.10 for an additional 31 weeks. The 450 weeks total compensation would be $41,238.90, and since this is less than the settlement of the third-party wrongful death claim (the first $50,000 of which is subject to counsel fees of at least 33 1/3% under the retainer or R. 1:21-7(c)), one-third thereof or $13,746.30 is the employer's obligation under N.J.S.A. 34:15-40 for its pro rata share of the attorney's fee. Owens v. C. & R. Waste Material, 76 N.J. 584 (1978). Worker's compensation paid to date totals $12,736.00, so that Rose Ann Merendino is now entitled to $1,010.30 plus $200 litigation costs. N.J.S.A. 34:15-40(e). Depending upon future contingencies, the widow may be entitled after the 450 weeks to further weekly payments from the employer (or carrier) representing additional pro rata share of the attorney's fee not exceeding 33 1/3% of additional weekly payments otherwise due pursuant to N.J.S.A. 34:15-40(e) and 34:15-13(j). The absolute maximum, of course, would be the $87,824.93 herein allowed as a counsel fee in the third-party action (including the $13,746.30 calculated as above for the first 450 weeks).
The trial judge handling the products liability-wrongful death action approved a proposed "structured" settlement, and allocation between the widow and child pursuant to N.J.S.A. 2A:31-4, as follows:
1. $210,000 cash "up front" to the widow, Rose Ann Merendino, from which attorney's fees and litigation expenses are to be paid.
2. Annual payments to the widow, beginning with $11,928.00 and increasing at 6% a year, compounded annually, for 25 years certain. Appendix A schedules these payments and the cumulative totals. The final payment is $48,295.76 and the cumulative total is $654,424.66.
*507 3. Five annual payments to the daughter, Justine Merendino, beginning in six years when she will be just under 18 years of age, in the amounts of $11,000, $12,000, $13,000, $14,000 and $22,000. The grand total is $72,000.
The annual payments to the widow and child are guaranteed, with appropriate survivorship provisions, and the trial judge had the benefit of a guardian ad litem report essentially concurring in the settlement provisions. For purposes of trial, plaintiff's expert economist had prepared an "Appraisal of Economic Loss" due to the death of Mr. Merendino which, discounted to present value, was asserted to be $343,647. Tenore v. Nu Car Carriers, 67 N.J. 466, 474 (1975). For purposes of settlement, trial court approval thereof, and this application for counsel fees in excess of the amount allowable under R. 1:21-7(c), plaintiff's attorney retained a "mediator and negotiator," one Daniel Bellin, president of Litigation Support Corporation. Bellin's opinion was that the "value of the settlement could be conservatively stated as $472,722," calculated as follows:

 Cash $210,000
 Value at 8.5% net rate of return
 for Justine Merendino payments 36,738
 Value, at same rate, for Rose Ann
 Merendino payments 225,984
 ________
 Total $472,722

Litigation Support Corporation apparently was also instrumental in obtaining insurance company funding of the annuities on a basis that makes the proceeds payable to Rose Ann and Justine Merendino without any federal income taxation thereon.[1] The cost to defendant of the annuities, however, was less *508 than Bellin's valuations, so that the actual present cost of the package is:

 Cash $210,000
 Cost of Justine Merendino Annuity 29,622
 Cost of Rose Ann Merendino Annuity 159,938
 ________
 Total $399,600

Although no trial or appeal was required, and no novel questions of law appear to have been involved, this case resulted in an excellent recovery for the widow and minor child of decedent. The imaginative blending of cash and annuities, on an after-tax basis and capitalizing on the power of compound interest, places the case, for attorney fee purposes, somewhere between the situations in Murphy v. Mooresville Mills, 132 N.J. Super. 197 (App.Div. 1975), certif. den. 68 N.J. 156 (1975), and Bolle v. Community Memorial Hospital, 145 N.J. Super. 593 (App.Div. 1976), certif. den. 74 N.J. 275 (1977). When an attorney considers the fee permitted by R. 1:21-7(c) to be inadequate, he may seek approval by the assignment judge "of a reasonable fee in light of all the circumstances." R. 1:21-7(f). Pursuant to R. 1:21-7(e) all contingent fees must conform to DR 2-106(A) that include, in pertinent part, as "guides in determining the reasonableness of a fee":
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services properly.
........
(4) The amount involved and the results obtained.
........
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
The trial judge approved the settlement on the basis of the above-described annuities and an indicated distribution of $100,000 of the $210,000 "up front" money to Rose Ann Merendino. Plaintiffs' counsel requests the balance of $110,000 for counsel fees and all disbursements, including the guardian ad litem's fee and costs. Disbursements were $4,459.45 and the trial judge allowed the guardian ad litem an $1,800 fee plus *509 disbursements of $49.30. These items total $6,308.75; hence the requested counsel fee is $103,691.25. It was agreed, however, that any reduction of this requested counsel fee would inure to the benefit of Justine Merendino. At a hearing before me Mrs. Merendino testified that her attorneys did an outstanding job, she was very satisfied, and she and her brother (also a New Jersey attorney) believed the attorneys deserved the requested fee. The guardian ad litem did not oppose the fee application either. Since the infant's share is directly involved, these concurrences are not controlling. Murphy v. Mooresville Mills, supra at 200. The 25% fee limitation on the first $50,000 recovery in the case of an infant, pursuant to R. 1:21-7(c)(7), is not applicable in a case such as this, however, where the class of beneficiaries in a wrongful death action includes both adults and infants. McMullen v. Maryland Cas. Co., 127 N.J. Super. 231, 239 (App.Div. 1974), aff'd 67 N.J. 416 (1975).
In determining the maximum fee allowable under R. 1:21-7(c) the first question is the multipliers to be used  those set forth in the retainer agreement or those provided by the rule itself. In view of R. 1:21-7(e), the lower multipliers are applicable  but the differences are only as to the first $3,000 recovered and in this case the difference is de minimis.
The second and more important question is the proper base or "recovery" figure to which the percentage multipliers should be applied. Plaintiffs' counsel suggests "value" of $472,722 as set forth above, rather than "cost" of $399,600 as also analyzed above. I find that the lower figure is the correct one, which represents the actual present value of the settlement. Bellin's calculation assumes an 8.5% rate or interest return, whereas the cost of the annuities reflects the actual present value in the marketplace. The marketplace cost is the acid test in a case like this  with fixed, guaranteed, periodic payments not requiring actuarial assumptions as to life expectancy or survivorship  rather than calculations of "value" that involve interest rate estimates for the future. In addition, presumably defendants *510 would be willing to alternatively pay the total cash cost of the package, or $399,600, to plaintiffs now  since they are presently expending such total to plaintiffs and the annuity underwriter. From this figure disbursements of $6,308.75, as set forth above, are deducted pursuant to R. 1:21-7(d), leaving an aggregate sum of recovery of $393,291.25 upon which to calculate the contingent fee.
Applying the retainer agreement percentage to the first $3,000 and the R. 1:21-7(c) percentages to the rest of the $393,291.25 results in the following initial calculation of allowable counsel fees:

R.1:21-7(c) % On Fee
(1) - Retainer agreement 33 1/3 $ 1,000.00 $ 333.33
(2) - Retainer agreement 33 1/3 2,000.00 666.67
(3) - Rule 33 1/3 47,000.00 15,666.67
(4) - Rule 25 50,000.00 12,500.00
(5) - Rule 20 150,000.00 30,000.00
(6) - Rule 10 143,291.25 14,329.13
 ___________ __________
 Totals $393,291.25 $73,495.80

The difference between plaintiffs' attorney's calculation of $81,293.55 as allowable under R. 1:21-7(c) and the court's calculation of $73,495.80 is largely due to the different bases upon which the multiplications are made. In any event, the application is under R. 1:21-7(f) for an attorney fee of $103,691.25 plus disbursements of $6,308.75 (including guardian ad litem allowance and costs) for a total of $110,000.00.
This presents the third and most important question of additional allowance, if any, to rectify any inadequacy, as permitted under R. 1:21-7(f), in order to provide a total "reasonable fee in light of all the circumstances." In my view, it is preferable to provide such allowance by adjustment of one or more of the R. 1:21-7(c) percentages rather than an undetailed flat figure. This will facilitate future calculation of possible additional payments *511 to Rose Ann Merendino by decedent's employer (or carrier) representing additional pro rata share of attorney's fee, as noted above in connection with worker's compensation benefits.
In this case, for the reasons already stated and those to be hereafter chronicled, I have concluded that the 10% attorney's fee allowance as to $143,291.25 under R. 1:21-7(c)(6) is inadequate and should be increased to 20%. This amounts to an additional allowance of $14,329.13 which, when added to the $73,495.80 calculated as above, results in a total attorneys' fee of $87,824.93. Disbursements of $6,308.75 are also allowable for a total of $94,133.68. The remaining balance of the $210,000 cash payments is distributable to the infant, Justine Merendino, so that the "up front" moneys will be distributed as follows:

 Rose Ann Merendino $100,000.00
 Justine Merendino[2] 15,866.32
 Counsel fees and disbursements
 (including guardian ad litem
 allowance and costs) 94,133.68
 ___________
 Total $210,000.00

In a case such as this, with the excellent "structured" settlement already described, the 10% attorney's fees as to amounts recovered over $250,000 provided by R. 1:21-7(c)(6) is inadequate. Contingent fees are an imaginative solution to the problem of the cost of legal services being an obstacle to vindication of a claim even when the plaintiff's stakes are very large. It is sometimes argued that contingent fees are often exorbitant, but the concept permits quality representation plaintiffs could otherwise not afford. By pooling a number of such claims, the lawyer specializing in such matters can reduce the *512 risk of loss or inadequate return on invested legal services. Additionally, the contingent fee compensates the lawyer for the loan of his services until the case is won or settled  usually a matter of years. R. 1:21-7(b) always requires that the client have the opportunity to decline a contingent fee arrangement and retain an attorney on the basis of reasonable value for services rendered. The contingent fee is therefore consensual, with court rule protection against overreaching. The remaining problem is to structure permissible fees, both generally and in specific cases, to try to attain the maximum aggregate marginal benefit for the client and the attorney. From an economics point of view, the relationship of marginal costs and benefits involved in contingent fee contracts may be modeled as follows:
*513 

Units of Legal Effort
The vertical axis reflects increasing expected recovery due to increasing units of legal effort as shown on the horizontal axis. The marginal benefit curves show the expected value in dollars of marginal increases in the number of units of legal effort. It is assumed all units of legal effort, borne by the attorney under a contingent fee contract, cost the same  and are diagrammed as MC on the model. The intersecting points of the attorney, client, and aggregate marginal benefit curves with the attorney marginal cost line are significant and labelled A, B, and C for reference. Marginal benefit curves are incremental and reflect probabilities of recovery and risks of loss, and it is assumed that *514 attorney and client marginal evaluations of expected value to them of additional units of legal effort are in a ballpark range of reasonable accuracy. The vertical dash lines from points A, B, and C, to the horizontal scale enable measurement of the units of legal effort expended at such critical points and permit the following logical deductions:
A. From a self-interest point of view, an attorney is motivated to expend only 4+ units of effort  because the expected value to him of effort past that point is less than the cost to him of that effort.
B. From his self-interest point of view, a client would like an attorney to continue expending units of legal effort all the way to 17 or point D  continuing beyond point B, since the marginal costs of additional units of legal effort are borne solely by the attorney.
C. To maximize the expected value with equal weight to the interest of both the attorney and the client, under a contingent fee contract where the attorney bears the marginal costs  the units of legal effort should be 12+ or the point at which the aggregate marginal benefit curve intersects the MC line.
From an ethical point of view, it seems clear that an attorney should continue legal efforts at least to point C on the model and our contingent fee rules should encourage such effort.[3] There are practical difficulties in determining these points, of course  but it seems clear that the 10% limitation, under R. 1:21-7(c)(6), of attorney fees for amounts recovered for a client over $250,000 does not encourage increased legal efforts from point A to point C. This is particularly apparent when the probable federal income tax consequences in such a situation (at a 50% effective rate) would reduce the net benefit to the attorney to 5%. Even taking into account economies of scale *515 that justify reduced fee percentages as amounts recovered increase, 20% on all amounts recovered over $100,000 is in the best interests of both attorney and client in a case such as this.
So ordered.

Appendix A.

 Table of Annual Payments Over 25-Years Increased
 at 6% Per Annum, Compounded. 
 Payment (Year) Cumulative
 Number Amount Balance
----------------------------------------------------------------
 1 | $ 11,928.00 | $ 11,928.00
 2 | 12,643.68 | 24,571.68
 3 | 13,402.30 | 37,973.98
 4 | 14,206.44 | 52,180.42
 5 | 15,058.83 | 67,239.25
 6 | 15,962.36 | 83,201.61
 7 | 16,920.10 | 100,121.71
 8 | 17,935.31 | 118,057.02
 9 | 19,011.43 | 137,068.45
 10 | 20,152.12 | 157,220.57
 11 | 21,361.25 | 178,581.82
 12 | 22,642.93 | 201,224.75
 13 | 24,001.51 | 225,226.26
 14 | 25,441.60 | 250,667.86
 15 | 26,968.10 | 277,635.96
 16 | 28,586.19 | 306,222.15
 17 | 30,301.36 | 336,523.51
 18 | 32,119.44 | 368,642.95
 19 | 34,046.61 | 402,689.56
 20 | 36,089.41 | 438,778.97
 21 | 38,254.77 | 477,033.74
 22 | 40,550.06 | 517,583.80
 23 | 42,983.06 | 560,566.86
 24 | 45,562.04 | 606,128.90
 25 | 48,295.76 | 654,424.66

NOTES
[1] One of the defendants is obligated to make all periodic payments to Rose Ann and Justine Merendino. Said defendant owns the annuity contracts. The periodic payments are therefore fully excludable, for federal income tax purposes, from gross income. I.R.C. § 104(a)(2); Treas. Regs. § 1.104-1(c); Rev. Rulings 79-220 and 79-313.
[2] To be placed in the Bergen County Surrogate's Intermingled Account, pursuant to R. 4:57-2(b), unless otherwise ordered by the court. This account currently earns interest at 15% compounded daily, for an effective annual yield of 16.422% to October 1, 1982.
[3] See generally, Schwartz & Mitchell, "An Economic Analysis of the Contingent Fee in Personal Injury Litigation," 22 Stanf.L.Rev. 1125 (1970); Clermont & Currivan, "Improving on the Contingent Fee," 63 Cornell L.Rev. 529 (1978).