616 A.2d 1085

**A.C. AND S., and the PMA Group, Petitioners,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (DUBIL), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 10, 1992.

Decided Oct. 28, 1992.

Ralph J. Johnston, Jr., for petitioners.

Howard M. Levinson, for respondent.

Before CRAIG, President Judge, and PELLEGRINI, J., BLATT, Senior Judge.

CRÀIG, President Judge.

Employer A.C. and S. and The PMA Group, employer's insurer (employer) appeal an order of the Pennsylvania Workmen's Compensation Appeal Board affirming a decision of a referee directing the claimant, Michael Dubil, to pay the employer $61,829.23, from a third-party award the claimant obtained, to satisfy the employer's subrogation lien for worker's compensation benefits paid to the claimant.

The questions the employer raises in this appeal are: (1) whether the referee erred by calculating the employer's subrogation lien based upon attorney's fees of 40% of the third-party recovery; (2) whether the referee erred in calculating the employer's subrogation rights based on the amount of the lien at the time of calculation rather than at the time of recovery; (3) whether the referee erred by basing his calculation on the value of the recovery at the time of settlement rather than the value of the settlement over the term the third party will be paying part of the settlement to the claimant; and (4) whether the employer is entitled to the accrued interest on its share of the award which the claimant's counsel held in escrow in an interest-bearing account.

The pertinent facts, as found by the referee, are:

4. ... [T]he case was ultimately resolved with the Claimant obtaining a recovery of $250,000.00; ($200,000.00 was paid directly to the Claimant and $50,000.00 was invested in a structured annuity.)

6. The Referee finds PMA's argument with regard to reasonable fees to be erroneous. A contingent fee, like any other fee, can be negotiated provided; and in light of the voluminous litigation involved in the third party action, a fee of 40% was not unreasonable.

7. The Defendant further objects to the Claimant's calculation of its subrogation lien and future credit contending it does not reflect the true value of the settlement, which will

actually amount to $306,000.00 as accrued interest on the annuity is paid to the Claimant.

8. As of June 9, 1988 when the third party action was settled, there were certain established facts:

1. $250,000.00 was the amount of the settlement to be paid on the Claimant's behalf.

2. The Workers' Compensation Carrier, PMA, had a total obligation to the Claimant of $108,810.69 representing 335 weeks of compensation for the loss of the Claimant's hand, plus his medical expenses and a statutory healing period.

3. PMA had already paid the Claimant wage loss benefits and medical expenses of $85,519.28.

4. There was an obligation for legal fees of 40% of the recovery on $100,000.00 plus litigation expenses of $8,642.95.

9. The Referee finds no merit in the contentions that the Attorneys Fees were unreasonable or that PMA is not obligated for a proportionate share. Further, the Referee does not accept PMA's argument that it would be entitled to any monies paid after the settlement in terms of interest. PMA is entitled to be subrogated and given a future credit but there is no obligation upon the Claimant to also pay PMA interest he will accrue from the settlement.

Based on those findings, the referee, purportedly following the formula this court adopted in *Bell Telephone Co. v. W.C.A.B.*, 127 Pa.Commonwealth Ct. 569, 562 A.2d 427 (1989), made the following subrogation calculation:

$108,810.69   Total lien due PMA

−46,981.46   Less attorney's fees and
                      costs assessed to PMA at 40%

$ 61,829.23   Net due PMA

Although the referee's factual findings do not reveal whether or not, at the time of the referee's hearing, the employer had satisfied its worker's compensation obligation to the claimant, the referee's reliance upon the *Bell* decision supports that conclusion. Also, the claimant's supplemental reproduced rec-

ord includes a worker's compensation supplemental agreement between the claimant and the employer which indicates that the employer was required to compensate the claimant for an additional 209 weeks commencing on November 19, 1985. Thus, this court concludes that the employer had satisfied its obligation to the claimant for the specific loss of his hand at the time the referee held the hearing in April 1990. Hence, there was no need in this case for the referee to provide for a future credit or grace period for the employer.

### 1. Attorney's fees

■ The employer argues that the 40% contingency fee the claimant's attorney received for his work in obtaining the third-party recovery is unreasonable and that the referee, in calculating the employer's subrogation lien, should have used the "traditional" 33⅓% fee. The employer does not cite to any case law or statute that dictates a traditional fee. A 40% fee is not unusual.

The employer appears to argue that the fee is unreasonable, in part, because the claimant's attorney in the third-party action declined to represent the employer's interest in that action. However, the employer fails to recognize the conflict of interest that would arise if the claimant's attorney represented both the claimant and the employer.

### 2. Date used to calculate lien

■ The employer argues that the referee, in calculating the employer's subrogation lien, should not have used the date of the hearing to determine the accrued lien, but rather, should have used the date of settlement to calculate the accrued lien, and then calculated a period of future credit. However, as indicated above, the employer's obligation to the claimant had already terminated by the time of the hearing.

The employer relies on the language of section 319 of the Act, which states that the bureau is to determine subrogation rights based upon the amount of compensation paid or payable *at the time of the recovery or settlement.* However, that language supports the referee's method, because the law refers to compensation paid or *payable.*

Additionally, this court concludes that the employer's suggested interpretation of the law is not reasonable under the circumstances in this case or others in which the employer's obligation has terminated by the time a referee conducts a hearing on the matter.

### 3. Recovery amount used in calculation of lien

The employer argues that the referee, in making his calculations, should have used the lifetime value of the $50,-000.00 annuity to determine the employer's pro-rata contribution for the cost of obtaining the settlement. The record indicates that the settlement would be worth $306,000.00 at the end of the annuity's term.[1] Because an employer's pro-rata share of expenses is calculated by dividing the compensation paid to the claimant by the amount of the recovery, the pro-rata share would be less if the $306,000.00 figure is used rather than the amount of $250,000.00.

Pennsylvania courts have never addressed this question before; however, in *Merendino v. FMC Corporation*, 181 N.J. 503, 438 A.2d 365 (1981), the Superior Court of New Jersey considered whether an attorney was entitled to a contingent fee based on the "value" (or term value of a settlement that included an annuity) or the cost of the annuity at the time of settlement.

The court concluded that the lower figure, the actual cost of purchasing the annuity, was the appropriate figure from which to calculate attorney's fees. The court stated:

> [The higher] calculation assumes an 8.5% rate or interest return, whereas the cost of the annuities reflects the actual

---

1. The settlement agreement indicates that the third party agreed to pay the claimant $300.00 per month for twenty years, one lump sum payment of $10,000.00 on June 10, 1998, and one lump sum payment of $24,000.00 on June 10, 2008. Additionally, the terms of the settlement provide for payments to be made to the claimant's beneficiaries in the event of his death. The agreement did not specifically state that the payments to the claimant would be from an annuity, but only that the third party had the right to secure the payments through the purchase of an annuity. However, at the hearing, counsel for the claimant and the employer stated that the payments would be made from a purchased annuity.

present value in the marketplace. The marketplace cost is the acid test in a case like this—with fixed, guaranteed, periodic payments not requiring actuarial assumptions as to life expectancy or survivorship—rather than calculations of "value" that involve interest rate estimates for the future. In addition, presumably defendants would be willing to alternatively pay the total cash cost of the package ... to the plaintiffs now—since they are presently expending such total to plaintiffs and the annuity underwriter. 438 A.2d at 368.

This court concludes that, under the particular facts of this case, section 319 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915; P.L. 735, *as amended,* 77 P.S. § 671, means the dollar value of the recovery at the time of the settlement, which is $250,000.00.

### 4. Employer's entitlement to interest

The employer also argues that it is entitled to interest that accrued on the money to which it was entitled which the claimant's counsel had placed in an interest bearing escrow account. Section 319 states that "the employer shall be subrogated to the right of the employee ... against such third party to the extent of the compensation paid or payable under this article...." The underlined text limits the employer's right to reimbursement to the amount of compensation it paid the claimant. In this case, the employer has been reimbursed the compensation it paid.

Accordingly, the legal analysis the referee and the board employed is correct. However, this court cannot discern how the referee arrived at the particular figure of $61,829.23 as the amount due the employer.[2]

Our calculations, in accordance with the *Bell* decision, are as follows:

---

2. The figure would be correct if the employer's pro rata share was 43.25% instead of 43.52%.

TOTAL RECOVERY $250,000.00

Legal Costs

$100,000.00 (40% of recovery for attorney's fees)
$ 8,642.95 (miscellaneous costs of litigation)

Total $108,642.95 Legal costs

Pro rata share = gross lien for compensation paid divided by gross recovery

108,810.69/250,000.00 = .435 (Employer's share)

Net amount due to employer:

= compensation paid    108,810.69
− 43.5% of legal costs    47,259.68

= $ 61,551.01   (Net to pay as to lien)

---

Or, following the forms the bureau provides, the calculations would appear as follows:

322

|  |  |  |  |
|---|---|---|---|
| 250,000 | Total recovery | | |
| −108,810 | Total workmen's compensation lien | | |
| =141,190 | Balance of recovery | | |

## DISTRIBUTION OF PROCEEDS

EXPENSES OF RECOVERY

| | | |
|---|---|---|
| Attorney Fees (40% of recovery) | 100,000.00 | |
| Other expenses | + 8,642.95 | |
| Total expenses | | 108,642.95 |

WORKMEN'S COMPENSATION LIEN

| | | |
|---|---|---|
| Compensation | 105,612.84 | |
| Medical | + 3,197.85 | |
| Total lien | 108,810.69 | |
| Less pro rata share of | −47,259.68 | |
| expenses at 43.5% | | |
| Net recovery of lien | | 61,551.01 |

CLAIMANT

| | | |
|---|---|---|
| Balance of recovery | 141,189.31 | |
| Less pro rata share of | −61,383.27 | |
| expenses at 56.5% | | |
| Net recovery to claimant | | 79,806.04 |

| | |
|---|---|
| TOTAL | 250,000.00 |

Nevertheless, because the claimant has not appealed the computation which favors the employer by $278.22, this court will affirm the referee's decision.

## ORDER

NOW, October 28, 1992, the decision of the Pennsylvania Workmen's Compensation Appeal Board, dated December 23, 1991, at No. A91–22, is affirmed.