**SUBURBAN DELIVERY, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (FITZGERALD), Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 5, 2003.

Decided Sept. 17, 2004.

Christopher H., Philadelphia, for petitioner.

Nicholas J. Starinieri, Philadelphia, for respondent.

BEFORE: COLINS, President Judge, and SMITH–RIBNER, Judge, and PELLEGRINI, Judge, and FRIEDMAN, Judge, and LEADBETTER, Judge, and JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge SMITH–RIBNER.

The sole question before the Court as stated by Suburban Delivery (Employer) is whether the Workers' Compensation Appeal Board (Board) erred in affirming the order of the Workers' Compensation Judge (WCJ), who concluded that the annuity obtained by Stephen Fitzgerald (Claimant) in his third-party tort claim structured settlement was properly valued at its *present value,* or *cost,* rather than at its minimum guaranteed payout, for purposes of calculating Employer's subrogation lien against the third-party recovery.[1] Employer requests the Court to reverse the order of the Board and to hold that the *future value* of Claimant's annuity shall be used in calculating Employer's pro rata share of attorney's fees, future credits and any grace periods in computing its subrogation lien.

I

The WCJ made explicit and concise findings of fact after conducting a hearing on Employer's petition to review compensation benefits offset. In its petition Employer requested subrogation and a credit for funds that Claimant received on January 10, 2000 from the third-party tort claim structured settlement of his negligence lawsuit filed in the Court of Common Pleas of Philadelphia County for damages arising out of injuries that Claimant sustained in a work-related automobile accident that occurred on November 4, 1996.

---

1. This case was reassigned to the opinion writer on March 30, 2004.

Claimant was injured when the delivery truck that he was operating for Employer on Interstate 95 in Philadelphia was struck in the rear by a tractor-trailer. Specifically, the WCJ found that Claimant along with Employer and its insurance carrier, Ohio Casualty West American, agreed to use January 10, 2000 as the appropriate date for determining the amount of total disability compensation paid to Claimant, totaling $228,621.20 ($54,198.93 for indemnity and $174,425.27 for medical expenses), and for determining the amount of Employer's subrogation lien. Employer has paid no compensation to Claimant since that date.

Claimant settled his third-party tort action for $1,435,000, which included a total cash upfront payment of $807,777 plus $627,223 for the purchase price of an annuity. *See* Settlement Release, R.R. 3a–7a. The tort action settlement release and Claimant's attorney's fees were based on the present value of the settlement, and the WCJ found no reason to use any other figure for calculating the amount to be repaid Employer's carrier. The annuity provided for guaranteed monthly payments of $3,000 over 30 years, commencing in January 2000, and specific lump sum payments of $50,000, $100,000 and $100,000, respectively, to be made in December 2006, December 2010 and December 2012.

Claimant paid his attorney $478,333.33 in attorney's fees and paid $7,861.15 in costs, and his counsel paid Employer's insurance carrier $151,154.34 to satisfy in full its net subrogation lien, based upon the present value of Claimant's annuity. Employer refused to execute a compromise and release agreement, which would have eliminated all of its future obligations to Claimant, and elected instead to pursue its petition claiming that repayment of its subrogation lien should have been calculated on the minimum guaranteed payout of $2,137,777 rather than on the settlement's present value of $1,435,000. Adopting Employer's position would result in an increase in its net recovery lien of over $25,000.[2]

The WCJ denied Employer's petition after determining that case law and common fairness dictated using the present value of Claimant's settlement when calculating Employer's subrogation lien. Moreover, Claimant was willing to execute a compromise and release, which would eliminate all future obligations of Employer's carrier in view of Claimant's receipt of monthly annuity payments and his additional receipt of social security benefits. The WCJ relied upon this Court's decision in *A.C. & S. v. Workmen's Compensation Appeal Board (Dubil)*, 151 Pa.Cmwlth.314, 616 A.2d 1085 (1992), which adopted the present value approach in calculating the

2. In Finding of Fact No. 6, the WCJ set forth the following formulas: (1) *net recovery lien*—pro rata ratio—$486,194.48 in expenses divided by $1,435,000 total recovery = 33.88%; pro-rata share of expenses—$228,621.20 total lien × 33.88% = $77,456.86; total lien less $77,456.86 = net recovery lien of $151,164.34; (2) *grace period*—$1,206,378.80 balance of recovery [total recovery less lien] divided by $266.67 weekly benefits = 4524 weeks; (3) *future recovery*—$408,737.62 expenses of recovery [$486,194.48 less $77,456.86] divided by 4524 weeks grace period = $90.35 per week; and (4) *future medi-*

cal obligation—$228,621.20 total lien divided by $1,435,000 total recovery = 15.93%.

Using Employer's maximum guaranteed payout figure of $2,137,777 over 30 years, Employer would obtain an increase in its net recovery lien by $25,468.40 based on the formula the WCJ used: pro rata ratio—$486,194.48 divided by $2,137,777 = 22.74%; pro rata share of expenses—$228,621.20 total lien × 22.74% = $51,988.46; total lien less $51,988.46 = employer's proposed net recovery lien of $176,632.74, *or a $25,468.40 increase in net recovery lien.*

amount due to satisfy a subrogation lien. He found that the circumstances here more closely paralleled those in *A.C. & S.* than those in *Allegheny Beverage Corp. v. Workmen's Compensation Appeal Board (Wolfe)*, 166 Pa.Cmwlth.646, 646 A.2d 762 (1994), relied upon by Employer. The WCJ discussed the pivotal distinctions between *A.C. & S.* and *Allegheny Beverage,* and he stated that *A.C. & S.* was applied in virtually all cases that were factually similar to the case *sub judice.*

■■■■ The Board agreed with the WCJ that the present value, or purchase price, of Claimant's annuity was the appropriate figure to use when calculating the amount due to satisfy Employer's subrogation lien. The Board relied upon *A.C. & S.* as controlling authority, and it too concluded that *Allegheny Beverage* did not apply because in that case the carrier received no repayment of its lien from the claimant's settlement proceeds.[3] In determining that the WCJ correctly applied the law, and noting that the most significant distinction between *Allegheny Beverage* and the present case is that the carrier has received all funds owed under its lien, the Board made the following cogent comments at page 5 of its August 14, 2002 opinion:

An annuity is merely an investment of money and annuities have a cost. We ... do not see any reason why Defendant should get benefit from the return on Claimant's investment in the annuity. If, in a non-annuity situation, Claimant took a portion of the settlement money received and invest[ed], no one would

reasonably argue that Defendant should have a subrogation interest in the return on Claimant's investment. Thus, here, where Defendant's subrogation lien has been satisfied with the up-front money, Defendant's future subrogation should be calculated on the remaining amount that Claimant received from his settlement, i.e. the amount of money used to purchase the annuity, not the amount of money that the annuity may ultimately earn.

The Court approves of the Board's logic in rejecting Employer's arguments, and it concludes that the Board did not err in following controlling authority and in upholding the decision of the WCJ.

## II

Section 319 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 671, which governs the subrogation rights of an employer and its insurance carrier, provides in relevant part as follows:

Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery, or in effecting a compromise settlement shall be prorated between the employer and

**3.** This Court's review of the Board's order is limited to determining whether constitutional rights were violated, an error of law was committed, a practice or procedure of the Board was not followed and whether the findings of fact are supported by substantial evidence in the record. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Gunter v. Workers' Compensation Appeal*

*Board (City of Philadelphia),* 573 Pa. 386, 825 A.2d 1236 (2003). The WCJ is the ultimate fact finder and the exclusive arbiter of witness credibility and evidentiary weight, but the WCJ's decision must be supported by substantial evidence. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Sebro),* 132 Pa.Cmwlth.288, 572 A.2d 843 (1990).

employe, his personal representative, his estate or his dependents. The employer shall pay that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement. Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employee, his personal representative, his estate or his dependents, and shall be treated as an advance payment by the employer on account of any future instalments of compensation.

■ The Pennsylvania Supreme Court has stated clearly that an employer's right to subrogation under the Commonwealth's workers' compensation system is automatic and that the employer is subrogated to third-party recoveries received by a claimant to the extent of the workers' compensation paid. *See Thompson v. Workers' Compensation Appeal Board (USF & G Co.)*, 566 Pa. 420, 781 A.2d 1146 (2001). Under Section 319 of the Act, when a claimant's third-party recovery provides an employer with repayment of its accrued subrogation lien, the employer must assume its proportionate share of the costs expended to recover that amount and must reimburse the claimant for legal expenses associated with the accrued lien at the time of its liquidation. *See P. & R. Welding & Fabricating v. Workmen's Compensation Appeal Board (Pergola)*, 664 A.2d 657 (Pa.Cmwlth.1995), *aff'd*, 549 Pa. 490, 701 A.2d 560 (1997). Moreover, a recovery that exceeds the accrued lien must be treated as an advance payment of the employer's future compensation obligation, thereby providing the employer with a "grace period" from making compensation payments. *Id.*

In *Brubacher Excavating, Inc. v. Workers' Compensation Appeal Board (Bridges)*, 575 Pa. 168, 171–172, 835 A.2d 1273, 1275–1276 (2003), the Supreme Court reiterated the following principles that apply in subrogation cases:

Subrogation in our workers' compensation system is a significant and firmly established right. Specifically, while subrogation is an important equitable concept that applies whenever a debt or obligation is paid by one party though another is primarily liable, *Smith v. Yellow Cab Co.*, 288 Pa. 85, 135 A. 858, 860 (1927), in the realm of workers' compensation, it has assumed even greater stature. Our Court has stated that the statutory right to subrogation is "absolute and can be abrogated only by choice." *Winfree v. Philadelphia Elec. Co.*, 520 Pa. 392, 554 A.2d 485, 487 (1989). This is so because the statute granting subrogation "clearly and unambiguously" provides that the employer "shall be subrogated" to the employee's right of recovery. *Id.; see also Thompson v. Workers' Comp. Appeal Bd. (USF & G Co.)*, 566 Pa. 420, 781 A.2d 1146, 1151, 1153 (2001) (Section 319 subrogation is automatic; *ad hoc* equitable exceptions do not apply to Section 319). Thus, the importance and strength of subrogation in our system of workers' compensation cannot be understated.

The ultimate and three-fold purpose of Section 319 of the Act is to prevent double recovery to an injured employee for the same injury, to ensure that an employer is not required to make compensation payments made necessary by the negligence of a third party and to prevent a third party from escaping liability for his or her negligence. *Poole v. Workers' Compensation Appeal Board (Warehouse Club, Inc.)*, 570 Pa. 495, 810 A.2d 1182 (2002). However, the Supreme Court has routinely acknowledged the well-settled principle in

workers' compensation case law that the Act is to be liberally construed in favor of the injured employee and in furtherance of the humanitarian purposes of the Act. *Sporio v. Workmen's Compensation Appeal Board (Songer Constr.)*, 553 Pa. 44, 717 A.2d 525 (1998); *Harper & Collins v. Workmen's Compensation Appeal Board (Brown)*, 543 Pa. 484, 672 A.2d 1319 (1996). That fundamental principle shall guide the Court in its disposition of the present appeal.

## III

Employer argues in this appeal that the holding in *A.C. & S.* should not control the outcome of this case because there the employer's obligations to the claimant had terminated by the time of the hearing and no need existed for providing a future credit or grace period for the employer. Here, in contrast, Claimant remains totally disabled and Employer is entitled to a future credit or grace period against Claimant's future compensation. In addition, the minimum guaranteed payments to Claimant may be easily computed as interest rate estimates or actuarial assumptions are unnecessary. Employer argues that this case is more analogous to *Allegheny Beverage* where the Court used the minimum guaranteed payout to the claimant for purposes of calculating the employer's pro rata share of attorney's fees for its credits and reimbursement of its subrogation lien. Reiterating settled principles in workers' compensation case law, Employer contends that under Section 319 of the Act it is to be accorded broad rights to *any* recovery that Claimant may receive, which necessarily includes the $2,137,777 minimum guaranteed value of the structured settlement, *see Cox v. Workmen's Compensation Appeal Board (Otis Elevator)*, 150 Pa.Cmwlth.205, 615 A.2d 878 (1992).

The issues and unique factual circumstances in *Allegheny Beverage* clearly are distinguishable from those in the case *sub judice*. The Court was faced with deciding the proper allocation of a third-party structured settlement to satisfy an employer's subrogation lien for past compensation paid to the claimant when no funds were available at the time of settlement to pay the lien, thereby necessitating a determination of the employer's future credits and liabilities. The claimant's settlement agreement provided for an upfront payment of $110,000, which he paid to counsel in full satisfaction of his fees; twenty years of guaranteed monthly payments of $1,250; and balloon payments at five-year intervals beginning in May 1990. The structured payments totaled $450,000. The claimant argued that the Court should compute the proper ratio for determining the employer's pro rata share of attorney's fees based on the present value of the settlement. The Court explained its refusal to adopt the present value approach in the following manner: the claimant's attorney accepted a lump sum fee rather than a percentage of the settlement; there was no expert evidence supporting the present value claimed by the claimant; present and future value calculations are not usually used in traditional subrogation cases because of the complexity that is involved in making the calculations; and the employer would not receive reimbursement of its lien for many years. *Allegheny Beverage*, 646 A.2d at 768.

The Court acknowledged in *Allegheny Beverage* that in traditional subrogation cases the claimant must first reimburse the employer or its carrier for past compensation paid to satisfy any outstanding subrogation lien, which is reduced proportionately by the claimant's attorney's fees and costs incurred in obtaining the third-party recovery. *See* Section 319 of the Act. The Court then held that the most

equitable and simplest way of dealing with the unique facts of that case would be to require a ratio that properly allocated the attorney's fees between the employer and the claimant over the guaranteed moneys available for recovery ($110,000 divided by $450,000 or 24.4444%). In his dissent, Judge McGinley disagreed with the majority's logic, noting that the claimant did not receive a lump sum at settlement but rather the right to receive varying amounts with a minimum guaranteed total of $560,000 over 25 years; that the right to receive these funds over 25 years is worth far less than the right to receive the sum presently; and that the parties recognized and agreed that the *net present value* of the structured payments at settlement was $275,000.

Similarly, the issue in *Mrkich v. Workers' Compensation Appeal Board (Allegheny County Children & Youth Services)*, 801 A.2d 668 (Pa.Cmwlth.2002), a more recent decision that discussed *Allegheny Beverage*, dealt solely with how to equitably enforce an employer's subrogation lien when a claimant received a third-party settlement, which included an annuity purchased for $85,000, but intentionally misled the employer and failed to disclose the annuity. In *Mrkich* the claimant received $85,000 in cash from the third-party recovery and made the employer aware of that lump sum payment only, from which counsel received $70,000 in fees and the claimant received the remainder. Almost one year later, the employer discovered the claimant's concealment of the annuity, payable in monthly installments over ten years, and it sought and was granted a supersedeas and a reduction in her benefits. The WCJ computed the grace period and the employer's pro rata share of attorney's fees and ordered the claimant to pay the subrogation lien immediately and if she was unable to do so to pay her monthly annuity checks to the employer for fifty-

seven months. The Board reversed in part because the WCJ had no authority to require a claimant to turn over her annuity payments.

On appeal, this Court concluded in *Mrkich* that "because the tort settlement is structured over time and was not fully disclosed until after the lump sum payment was improperly distributed, applying the traditional calculations [for repayment of an employer's subrogation lien] is impossible. To do so would violate fundamental principles underlying the gross method and basic subrogation law." *Id.*, 801 A.2d at 675. The Court noted that it was necessary to deal separately with the present and future components of a structured tort recovery in the unique situation presented, and it vacated the Board's order and remanded the case for a recalculation of the employer's lien and benefits due to the claimant. The Court in *Mrkich* did not discuss the holding in *A.C. & S.* or otherwise cite to it in arriving at what the Court considered to be an equitable remedy under the circumstances presented in that case.

IV

Neither the circumstances here nor those in *A.C. & S.* involved a third-party recovery insufficient to satisfy immediately an employer's subrogation lien as was the case in *Allegheny Beverage* or a third-party recovery deliberately concealed from an employer as was the case in *Mrkich*. The claimant in *A.C. & S.* obtained a third-party recovery of $250,000, $200,000 of which was paid to the claimant and $50,000 of which was invested in a structured annuity. The referee ordered that the employer be paid $61,829.23 from the award to satisfy its subrogation lien. The employer argued, however, that reimbursement of its lien should have been calculat-

ed on the true value of the settlement, which would amount to $306,000 as accrued interest on the annuity was paid to the claimant, and that the referee should have used the life-time value of the annuity rather than the present value to determine the employer's pro rata contribution for the cost of obtaining the settlement. The employer contended that its pro rata share would be less if the future value of the annuity was used rather than its present value.

Former President Judge Craig wrote in *A.C. & S.* that the Court had never addressed the question raised by the employer, but after considering the reasoning articulated in *Merendino v. FMC Corp.*, 181 N.J.Super. 503, 438 A.2d 365 (Law Div. 1981), the Court concluded that under the facts in *A.C. & S.* Section 319 of the Act must be interpreted to mean "the dollar value of the recovery at the time of the settlement, which is $250,000." *A.C. & S.*, 616 A.2d at 1088. In *Merendino* the court considered whether an attorney was entitled to a contingent fee based on the value or on the cost of an annuity at the time of settlement in a wrongful death action, and it held that the actual purchase price of the annuity represented the appropriate sum from which to calculate the fees. This Court quoted as follows:

> [The higher] calculation assumes an 8.5% rate or interest return, whereas the cost of the annuities reflects the actual present value in the marketplace. The marketplace cost is the acid test in a case like this—with fixed, guaranteed,

periodic payments not requiring actuarial assumptions as to life expectancy or survivorship—rather than calculations of "value" that involve interest rate estimates for the future. In addition, presumably defendants would be willing to alternatively pay the total cash cost of the package ... to the plaintiffs now—since they are presently expending such total to plaintiffs and the annuity underwriter.

*A.C. & S.*, 616 A.2d at 1087–1088 (quoting *Merendino*, 438 A.2d at 368). Pursuant to *A.C. & S.*, the Board properly determined that Employer's subrogation lien calculations were correctly based on the present value of Claimant's annuity.[4] Furthermore, the Court agrees that *Allegheny Beverage* is not controlling because none of its criteria applies, and the fact that the employer's obligations there had ended by the time of hearing is irrelevant in view of Claimant's offer to release Employer from all future obligations.

The Court's holding in *A.C. & S.* is consistent with other decisions involving payouts from structured settlements; it offers a rational, non-complex and efficient method for calculating the sums due to satisfy in full an employer's subrogation lien when a claimant's third-party structured tort recovery is sufficient in amount to pay the employer immediately; and it constitutes controlling authority for the Board's decision. Moreover, the Court is persuaded by the reasoning espoused by the court in *Johnson v. Sears, Roebuck & Co.*, 291 Pa.Super. 625, 436 A.2d 675

---

4. In *Johnson v. Sears, Roebuck & Co.*, 291 Pa.Super. 625, 436 A.2d 675 (1981), a settlement agreement included a $100,000 upfront payment to an injured minor's guardian, $500,000 upfront payment to counsel for counsel fees and a lifetime annuity, which included yearly payments of $23,000 (with 3% increase per annum compounded) for the life of the minor child. The Pennsylvania Superior Court determined that "the most equitable method of valuing an annuity for the purpose of determining the amount of attorneys' fees due is by the cost of the annuity," reasoning that "[t]he cost of the annuity takes into account the possibility that the [recipient] may live longer or shorter than his anticipated life expectancy and is priced accordingly." *Id.* at 678.

(1981), for its decision pertaining to the appropriate method for computing attorney's fees in a structured tort recovery: "Considering the nature of annuity settlements and the fact that they may be paid out over an extensive period of time, we believe this method of payment [award for one-third of the lump sum payment to counsel plus one-third of periodic payments if and when received] can be both unwieldy and impractical." *Id.* at 678; *see also Pennsylvania Mfrs. Ass'n Ins. Co. v. Wolfe,* 534 Pa. 68, 626 A.2d 522 (1993) (where quoting from *Johnson* the Supreme Court reversed the panel decision in *Pennsylvania Mfrs.' Ass'n* because it provides that plaintiff's attorney be paid in a manner that was "both unwieldy and impractical").

V

In conclusion, the Court declines to adopt Employer's position that the maximum guaranteed payout, or future value, of Claimant's annuity should be used in making the appropriate subrogation lien calculations. To do so would create a process that is "both unwieldy and impractical" for calculating an employer's pro rata share of attorney's fees, future credits and grace periods where the present value of the claimant's third-party recovery is readily ascertainable, as here, and where upfront cash payments to the claimant are sufficient, as here, to pay the employer immediately and in full satisfaction of its lien. The consideration of present value, or cost, of an annuity in making lien calculations under these circumstances obviates the need or the potential for further hearings during the course of the annuity period, in this case over the next 30 years, when disputes might arise as to the annuity's value based on changed economic conditions, the annuitant's life expectancy or other relevant circumstances.

The approach in *A.C. & S.* shall continue to control and guide the WCJs and the Board in deciding these cases. The Court reaffirms its decision, and it expressly holds that when a claimant receives a lump sum recovery in a third-party tort claim structured settlement and the lump sum is sufficient to pay in full an employer's net subrogation lien, the present value of the structured settlement, or cost of any annuity, shall be the appropriate figure to use when calculating the employer's pro rata share of attorney's fees, future credits and any grace periods in connection with the reimbursement of its lien. This decision is in accord with the Supreme Court's repeated admonition, i.e., that the Act is to be liberally construed in favor of the injured employee and in furtherance of its humanitarian purposes, and it is in accord with the three-fold purposes of Section 319 of the Act. *Sporio; Harper & Collins; Poole.* Claimant has not received a double recovery for the same injury, Employer has not been required to pay compensation made necessary by the negligence of third parties and such parties have not escaped liability as evidenced by the tort claim settlement.

From its review in this matter, the Court first concludes that the WCJ's findings are supported by substantial evidence in the record, and it next concludes that the WCJ and the Board were correct in following *A.C. & S.* as controlling authority and using the present value, or cost, of Claimant's annuity purchased as part of his $1,435,000 structured settlement to calculate Employer's pro rata share of attorney's fees, future credits and grace periods for computing the net recovery subrogation lien due Employer. Accordingly, the Court affirms the Board's order.

### *ORDER*

AND NOW, this 17th day of September, 2004, the order of the Workers' Compensation Appeal Board is affirmed.

DISSENTING OPINION BY Judge LEADBETTER.

In this case we are called upon to resolve a conflict between *A. C. and S. v. Workmen's Compensation Appeal Board (Dubil)*, 151 Pa.Cmwlth.314, 616 A.2d 1085 (1992) and more recent decisions of this court, including *Allegheny Beverage Corp. v. Workmen's Compensation Appeal Board. (Wolfe)*, 166 Pa.Cmwlth. 646, 646 A.2d 762 (1994) and *Mrkich v. Workers' Compensation Appeal Board (Allegheny County Children & Youth Services)*, 801 A.2d 668 (Pa.Cmwlth.2002) as to whether, in calculating subrogation payments and credits arising from a claimant's third-party tort recovery involving an annuity to be paid over a term of years, the attorney fee component is expressed as a percentage of the total guaranteed recovery or of the present or cost value of that recovery. Because I believe not only that it is jurisprudentially sound to follow the published opinions of two recent panels, but also that those opinions were correctly decided, I must respectfully dissent.

The majority correctly notes that *Wolfe* and *Mrkich* involved facts which are distinguishable from the case at hand. However, the analysis in those cases did not depend upon those distinguishing facts, but were grounded in basic principles of subrogation law. These general principles were reviewed by this court in *Mrkich.* There, the court stated:

> Pursuant to Section 319 of the Act, 77 P.S. § 671, where the compensable injury is caused in whole or in part by a third party, the employer who has paid compensation benefits to the injured employee is subrogated to the right of the employee against the third-party tortfeasor. Where suit is brought and a recovery obtained against the tortfeasor, the employer has a past due lien against that recovery in the amount of the past benefits paid. Employer has an absolute right to immediate payment of this past due lien from the recovery fund after payment of attorneys' fees and litigation expenses. [FN2] *Thompson v. Workers' Comp. Appeal Bd. (USF & G Co.)*, 566 Pa. 420, 781 A.2d 1146 (2001); *Rollins Outdoor Advertising v. Workmen's Comp. Appeal Bd. (Maas)*, 506 Pa. 592, 487 A.2d 794 (1985). . . .

> FN2. These costs of recovery must be paid first. *Pennsylvania Mfgs. Ass'n Ins. Co. v. Wolfe*, 534 Pa. 68, 626 A.2d 522 (1993)[(*Wolfe I* )].

It is now well settled that the "gross method" is the accepted means of calculating payments pursuant to employer's subrogation interest. *P & R Welding & Fabricating v. Workmen's Comp. Appeal Bd. (Pergola)*, 549 Pa. 490, 701 A.2d 560 (1997). *See also* 34 Pa.Code § 121.18; *Emanuel v. Workmen's Comp. Appeal Bd. (Coco Bros., Inc.)*, 692 A.2d 1182 (Pa.Cmwlth.1997). Under the gross method, after deducting the attorney's fees and expenses of litigation (collectively, "costs"), employer's lien is satisfied by payment of the lien amount minus the proportionate share of costs attributable to the lien. [FN3] Whatever remains of the recovery fund is paid to claimant. For purposes of gross method computation, employer is considered to have been paid, in satisfaction of its lien, both the cash it actually received and the proportionate share of costs it constructively paid. Similarly, claimant is considered to have been paid both the cash actually received and the share of costs attributable to that payment. This total amount attributed to claimant is known as the "balance of recovery." If, by the time the tort recovery is obtained the claimant is no longer disabled, each side will have obtained what it is due and will have paid its proportionate

share of costs. Where claimant has not fully recovered, however, the employer retains a contingent subrogation interest in the balance of recovery paid to claimant, and receives a credit in this amount toward future compensation benefits to the extent they become payable. Employer is excused from paying future benefits until this credit is exhausted.

> FN3. In traditional gross method computation, the proportionate share of costs attributed to the lien is calculated by dividing the lien amount by the total recovery then multiplying this fraction by the total amount of costs. The same result may be reached by dividing the cost amount by the total recovery and then multiplying this fraction by the amount of the past-due lien. The latter approach provides an added measure of flexibility where the calculation becomes more complicated, such as where the tort suit is resolved by a structured settlement rather than a lump sum payment. *See Allegheny Beverage Corp. v. Workmen's Comp. Appeal Bd. (Wolfe),* 166 Pa.Cmwlth. 646, 646 A.2d 762 (1994)[*(Wolfe II)*].

This period of time, measured in weeks, is computed by dividing the credit by the weekly compensation benefit amount. The result is known as the "grace period." Since the balance of recovery attributed to claimant included claimant's proportionate share of the litigation costs, during each week of the grace period employer must repay the claimant for the litigation costs attributable to the compensation benefit it is excused from paying.

*Id.* at 674–75 [quoting *Budd Co. v. Workers' Comp. Appeal Bd. (Settembrini),* 798 A.2d 866, 868–69 (Pa.Cmwlth.2002)]. In *Mrkich,* the court further opined that:

> Several fundamental principles guide us in our calculations under the gross method. First, at the heart of the gross method is the notion that fees and offsets are not taken until the party charged has received the benefit giving rise to the fee or offset. Thus, employer's share of counsel fees is deducted or paid incrementally as each subrogation payment or credit is received. It is basically a "pay as you go" system. This is the primary difference between the gross method and the now discredited net method. *P & R Welding,* 549 Pa. at 496–99, 701 A.2d at 564–66.... Finally, where the recovery takes the form of an annuity, it is the total value of future payments upon which the calculations are to be based, not the present value at the time of settlement. *Wolfe II,* 646 A.2d at 767–68.

801 A.2d at 675–76 (footnote omitted). Further, an employer continues to have a contingent subrogation right in future annuity payments to the extent a claimant remains disabled and entitled to benefits. *Id.* at 677.

With respect to the issue at hand, the court in *A.C.* held that the present or cost value of the annuity was the proper figure upon which to determine the percentage the fees and costs bear to the total recovery, while the court in *Wolfe* and *Mrkich* held that the total of guaranteed payments should be used. In other words, the attorney fee percentage[1] would be calculated under *A.C.* by dividing the fees and costs paid by the cost or present value of the annuity (plus any lump sum cash payment), and under *Wolfe* and *Mrkich* by dividing fees and costs by the total guaran-

---

**1.** The percentage being discussed throughout this opinion includes both counsel fees and costs of litigation, but for the sake of simplici-

ty, these combined costs are frequently referred to as fees or counsel fees.

teed payout. For several reasons, I believe the later cases express the better view.

First, the result in *A.C.* was based solely upon a New Jersey trial court decision, *Merendino v. FMC Corp.*, 181 N.J.Super. 503, 438 A.2d 365 (1981), which did not involve subrogation, nor any other question regarding the calculation of various parties' respective shares of a given counsel fee. Rather, *Merendino* considered how large a fee should fairly be allowed and actually paid on a settlement involving, in part, a minor's wrongful death claim. Moreover, the issue was whether the fee should be based upon the cost of the annuities or upon the present value attributed to them in an expert report, a far different choice than that presented here. The court, in opting to use the actual cost to determine the allowable fee, stated:

> [The higher] calculation assumes an 8.5% rate or interest return, whereas the cost of the annuities reflects the actual present value in the marketplace. The marketplace cost is the acid test in a case like this—with fixed, guaranteed, periodic payments not requiring actuarial assumptions as to life expectancy or survivorship—rather than calculations of "value" that involve interest rate estimates for the future.

438 A.2d at 368. To the extent that the analysis in *Merendino* has any relevance to the present inquiry, its reluctance to rely upon expert assumptions and opinions tends to support the total value approach. While the present case involves an annuity purchased at a known cost at the time of settlement, structured settlements often, as in *Wolfe*, are provided by the defendant's insurer and present value can be determined only by expert testimony. *See Wolfe*, 646 A.2d at 767. Thus, fact-finding and potentially costly hearings would frequently be needed to base calculations on present value, possibly leading to extended litigation. Since the total guaranteed payout is a known figure not subject to dispute, the parties' counsel can readily do the calculations based upon that amount.

Next, as noted in *Mrkich,* using the cost or present value of the recovery to determine the counsel fee percentage will inflate that percentage in a way that will sometimes result in more fees being reimbursed than were actually paid by claimant. 810 A.2d at 676 n. 9 This is because, dividing the counsel fee by the lower present value rather than the full amount claimant will ultimately receive will result in a higher percentage rate. If employer pays that higher percentage rate on the full amount of the annuity payout in counsel fee reimbursements (because the annuity has relieved the employer of its compensation obligation), ultimately the fees reimbursed will be greater than the fees paid. This will not be a concern in a case like the present, in which the tort recovery would appear to far exceed the amount of compensation payable over claimant's lifespan. It will, however, occur whenever the full amount of the recovery does not exceed the amount of employer's compensation liability over the claimant's lifetime.[2] The

---

2. Take, for example, a settlement which provides for a lump sum payment of $80,000 and an annuity guaranteed to pay $10,000 per year for a period of 10 years. The present or cost value of the annuity is $75,000. Counsel fees and costs amount to $60,000 and employer has an outstanding lien of $20,000, leaving a lump sum balance to claimant of $60,000. Compensation benefits are payable at $8000/ year. The total guaranteed value of the settlement is $180,000, and its present or cost value is $155,000. Dividing the fees by each of these sums yields a fee percentage of 33.3% [actually 1/3] of the total value, and 38.7% on the present or cost value. On the initial lump sum, employer will have paid $6,666.67 of the counsel fees under the total value method and $7,741.94 under the present or cost value

theory underpinning the gross method is that each side pays his exact pro rata share of the fees and costs as he receives the benefit generated by litigation,[3] so that if at the end of the day employer receives the benefit of the entire recovery through the grace period, it will have reimbursed all the fees claimant initially paid. Adjusting the fee percentage so that the reimbursement exceeds the actual fee payment would defeat the intended balance.

Most fundamentally, as explained in *Wolfe,* none of the other factors involved in traditional subrogation calculations is adjusted to reflect the time value of money. For instance, a grace period is calculated based upon the actual lump sum received by the claimant even though the interest that can be generated on that lump sum will make it last longer than the calculated grace period, *i.e.,* future value of the recovery, although more accurate, is not used in the computation. *Wolfe,* 646 A.2d at 767–68. Similarly, although satisfaction of a subrogation lien may occur years after compensation payments were made, no interest is allowed on the reimbursement, nor is interest allowed on any of the various offsets and reimbursements allowed under the gross method subrogation scheme. As *Wolfe* recognizes, present or cost value is the lump sum amount which will generate sufficient interest to combine with that lump sum to fund the full annuity payout. Thus, to increase the counsel fee

percentage by basing it upon present value rather than the actual guaranteed payments is, in effect, to build an interest factor into the reimbursement of fees. 646 A.2d at 768. This is inconsistent with the "pay as you go" concept of the gross method, and it is simply inappropriate to treat one component of the computations different from all others in this regard. *Id.* at 767–68.

Accordingly, I would reverse the order of the Board.

Judge COHN JUBELIRER and Judge LEAVITT join this dissenting opinion.

method. Claimant will have paid $53,333.33, or $52,258.06 respectively. If employer is relieved of a compensation liability throughout the annuity period [10 years at $8000/year = $80,000] and enjoys the subsequent grace period generated by the total of claimant's share of the lump sum payment [$60,000] plus the additional amount by which the annuity payments exceeded the compensation obligation [$20,000], then at the end of the grace period, under the total value method employer will have reimbursed claimant $53,333.33 [1/3 of $80,000 + $60,000 +

$20,000] and directly paid $6,666.67 in fees on its share of the lump sum distribution, for a total fee payment of $60,000. In contrast, under the present or cost value method, employer will have reimbursed claimant $61,920 [38.7% of $80,000 + $60,000 + $20,000] and directly paid $7,741.94, for a total of $69,661.94, significantly more than counsel fees and costs actually paid.

3. *See, e.g., P & R Welding,* 549 Pa. at 496–99, 701 A.2d at 564–66.